Cooper v. The State.

Filed Oct. 17, 1889.

---

No. 14,586.

## COOPER v. THE STATE.

CRIMINAL LAW.—*Grand Jury.*—*Irregularities.*—*Abatement.*—Mere irregularities in drawing and organizing a grand jury composed of qualified persons, which are not prejudicial to the substantial rights of the defendant, and involve no charge of fraud or corruption, are not available as a plea in abatement.

| 120 | 377 |
| 124 | 12 |
| 127 | 18 |
| 120 | 377 |
| 139 | 619 |
| 120 | 377 |
| 141 | 151 |
| 142 | 166 |
| 143 | 688 |
| 120 | 377 |
| 144 | 249 |
| 120 | 377 |
| 149 | 406 |
| 149 | 407 |
| 151 | 496 |
| 120 | 377 |
| f153 | 378 |
| 120 | 377 |
| 157 | 539 |
| 120 | 377 |
| f169 | 386 |
| 170 | 653 |

Cooper *v*. The State.

SAME.— *Waiver of Right to Plead in Abatement.*—By pleading to the indictment and procuring a change of venue, the defendant waives his right to file a plea in abatement, and to object to the qualification of grand jurors or to the mode of drawing or constituting that body.

SAME.—*Instructions to Jury.*—*Reversal of Judgment.*—If, upon considering all of the instructions together, it appears that the law was stated with substantial accuracy, so that the jury could not have been misled, there is no ground for reversal, although a particular instruction or detached portion may not be precisely accurate.

SAME.—*Bill of Exceptions.*—*Statement Concerning Instructions.*—Where it does not appear by an affirmative statement in the bill of exceptions that the instructions set out therein are all that were given, the judgment will not be reversed unless the instruction complained of is so radically wrong as to be incurable.

SAME.—*New Trial.*—*Newly Discovered Evidence.*—To secure a new trial on the ground of newly discovered evidence, either diligence or an excuse for not exercising it must be shown, and it must also appear that the new evidence is of such character as to raise a reasonable presumption that the result would be different on a second trial.

SAME.—*Excessive Use of Intoxicants.*—*Delirium Tremens.*—After an accused has been convicted of murder over a defence of self-defence, affidavits of newly discovered witnesses to the effect that for several months prior to the homicide the accused drank intoxicating liquors to such an extent that he either had, or was on the verge of having, the *delirium tremens* when the homicide occurred, of which facts the accused, as an excuse for not exercising diligence, deposes that he was ignorant until the affidavits were read to him after the trial, are not sufficient to authorize a new trial.

SAME.—*Unsoundness of Mind.*—*Conclusion of Witness.*—Statements of witnesses, in affidavits in support of an application for a new trial on the ground of new evidence, that by the excessive drinking of intoxicating liquors the accused's mental faculties had become so impaired that he was not responsible for his acts, are mere conclusions, which will be disregarded.

SAME.—*Separation of Jury.*—*Misconduct.*—A separation by one or two jurors for a necessary purpose, attended by the proper officer, is not misconduct which entitles a party to a new trial.

From the Jefferson Circuit Court.

*F. M. Griffith, J. W. Linck* and *J. A. Works,* for appellant.

*L. T. Michener,* Attorney General, *M. R. Sulzer,* Prosecuting Attorney, and *J. H. Gillett,* for the State.

Cooper v. The State.

MITCHELL, J.—An indictment was returned into the Switzerland Circuit Court charging the appellant, Cooper, with the crime of murder. After arraignment, and plea of not guilty, the defendant applied for, and procured, the venue of the cause to be changed to Jefferson county. After appearing in the circuit court of the latter county he withdrew his plea of not guilty and pleaded in abatement, assigning as reasons for abating the indictment: 1. That the grand jury was not drawn within a period not more than one week preceding the commencement of the term at which the indictment was found and returned. 2. That two of the persons drawn as grand jurors were drawn by the names of C. H. Bascom and J. C. Ricketts respectively, their christian names being otherwise omitted. 3. That only three of the persons drawn and summoned as grand jurors appeared in court; that the places of the three who failed to appear were filled by the sheriff from the bystanders, and that the record does not show that the persons thus called were examined touching their qualifications. 4. That the court appointed one of the persons thus called from the bystanders as foreman of the grand jury.

The court sustained a demurrer to the plea. In this there was no error.

The intervention of mere irregularities in drawing and organizing the grand jury, which involve no charge of fraud or corruption, and which in no way prejudice the substantial rights of the defendant, assuming, in the absence of anything appearing to the contrary, that the body as constituted was composed of persons duly examined and qualified, and not subject to any of the statutory causes of challenge, is not available as a plea to abate the indictment. Whart. Cr. Pl. and Pr. (9th ed.), section 350; State v. Mellor, 13 R. I. 666.

Section 1656, R. S. 1881, specifies certain causes for which a grand jury may be challenged, and confines the right of challenge to the causes specified. It may be that in case a

person accused of crime has no opportunity to make the challenge, the facts upon which a challenge might have been predicated could be pleaded in abatement at the proper time, but the grounds available as a basis for challenge can not be extended by plea in abatement. Besides, the right to file a plea in abatement was waived by pleading to the indictment, and applying for and obtaining a change of venue, which was equivalent to a general continuance.

An objection to the qualification of grand jurors, or to the mode of drawing or constituting the body, must be made before pleading to the indictment. If not made until after plea, the objection is waived. *United States* v. *Gale*, 109 U. S. 65 ; *Cooper* v. *State*, 64 Md. 40.

" Though the demand upon the prisoner at the arraignment is to say whether he is guilty or not guilty, he may, instead of answering this question, * * * plead in abatement. * * And he must plead in abatement or demur now, or not at all ; for his right to do either is waived by the plea of guilty or not guilty." 1 Bishop Cr. Proc., section 730.

" Without leave of court, which is granted only in very strong cases, the plea of not guilty can not be withdrawn to let in a plea in abatement, for on principle a plea of not guilty admits all that a plea in abatement contests, and after a plea of not guilty, a plea in abatement is too late. A plea in abatement, also, can not, it has been held, be filed after a general continuance." Whart. Cr. Pl. and Pr., section 426.

The plea was, as we have seen, intrinsically insufficient, and not having been filed until after the defendant pleaded not guilty, which plea does not appear to have been withdrawn by special leave of court, there was ample justification on either ground for the ruling of the court in sustaining the demurrer.

It is objected that the court erred in defining the crime of manslaughter, in that it omitted the word " voluntary." In all other respects the definition follows the statute literally. It is not perceived how the defendant could have been prej-

udiced by the omission of this word. Besides, the omitted word was in effect supplied in an instruction subsequently given.

The rule is firmly established that if, upon considering all the instructions together, it fairly appears that the law was stated with substantial accuracy, so that the jury could not have been misled, no ground for reversal is presented, even though a particular instruction, or some detached portion thereof, may not be precisely accurate.

Other instructions given by the court are made the subjects of criticism. What has been said above is applicable to all those to which objection is made. Without setting out the instructions, or indulging in extended comment upon them, it is enough to say that certain expressions may be found in each of those pointed out as objectionable, relating to abstract principles of law, which when considered apart from the instructions as a whole, may not be strictly and technically accurate, but with the exception that they seem unnecessarily long and numerous, they are not justly subject to animadversion.

It may not be amiss to remark that, as a rule, whenever instructions extend beyond a clear and concise statement of the law applicable to the facts as admitted or claimed to be proven in the particular case, they become hindrances rather than aids to a jury of non-professional men, unacquainted with the abstract principles and technical language of the law. Thompson Trials, section 2333.

Moreover, while it appears that the court gave certain instructions, set out in a bill of exceptions, it does not affirmatively appear, either by implication or by a direct statement to that effect, that the instructions set out in the bill were all that were given. In the absence of such affirmative statement, or something from which the fact could be implied, we could not reverse a judgment unless an instruction complained of was so radically wrong as to be incurable.

*Puett* v. *Beard,* 86 Ind. 104 ; *Garrett* v. *State,* 109 Ind. 527 ;. *Grubb* v. *State,* 117 Ind. 277.

The appellant predicated his defence wholly upon the theory that he had taken the life of a human being in what he believed to be the lawful and justifiable defence of his person. He went upon the stand as a witness in his own behalf, and gave an intelligent and detailed account of all the circumstances and inducements, as he claimed, that led up to and culminated in the homicide. After a verdict finding him guilty of murder in the second degree, the defendant. assigned, as one of the grounds for a new trial, that since the return of the verdict he had discovered new, competent. and material evidence, which is embodied in the affidavits of six or seven witnesses, whom it is alleged can be produced if a new trial should be granted. These persons all depose, in substance, that for several months prior to the homicide the accused indulged the habit of drinking intoxicating liquors to such an extent as that he either had, or was upon the verge of having, the *delirium tremens* about the time the homicide occurred, and that in their opinion he had, by continual drinking to excess, so impaired his mental faculties as that he was of unsound mind, and not responsible for his acts. As an excuse for not exercising diligence in not discovering the above evidence prior to the trial, the accused deposes that he was not aware of the fact that his mind had become affected by drink until he heard the affidavits of the newly discovered witnesses read, and that he never had any knowledge or intimation of the facts set forth in the affidavits before going into the trial. Counsel for the accused deposed substantially to the same effect.

It does not appear how it came about that the new evidence was discovered after the return of the verdict. The showing was insufficient for two reasons : 1. There is no diligence whatever shown, nor do the facts averred present any excuse for the failure to exercise diligence. 2. The evidence alleged to have been newly discovered is not of such

a character as to raise a reasonable presumption that the result of a second trial would be different from the first.

It is incredible that the accused, after having lived a life of comparative sobriety, should have indulged in a course of continued dissipation for several months until he had reached the verge of *delirium tremens*, and that after recovering therefrom and regaining his faculties, he should have been so utterly oblivious to his previous condition as not to know anything about it, or its effects upon him, until the affidavits of others were read in his hearing. It should be stated that the homicide occurred in November, 1884, after which the accused fled the State, and was not apprehended and tried until after a period of more than three years had elapsed. It can not escape observation, that he and his friends should have remained in total ignorance of his impaired mental condition during all this time, and until after an unsuccessful defence had been made on another theory, stoutly contended for, and that in some undisclosed manner the evidence upon which a defence of insanity was then proposed, should be discovered so soon after an adverse verdict.

The newly discovered testimony amounts to nothing more than that the accused had indulged to excess in drink for several months prior to the homicide, and that he was on the verge of *delirium tremens*. The statements made by the several witnesses that his mental faculties had thereby become impaired to such a degree that he was not responsible for his acts, were mere conclusions which can not be regarded. *Warner* v. *State*, 114 Ind. 137; *Grubb* v. *State, supra*.

It is not pretended that the homicide occurred while the accused was in a fit of delirium, and the mere fact that he had, by several months' excessive drinking, brought on a nervous condition bordering on delirium, would be very slight evidence of insanity. As is said in *Insurance Co.* v. *Foley*, 105 U. S. 350: "An attack of *delirium tremens* may sometimes follow a single excessive indulgence."

New trials for newly discovered evidence ought only to

be granted after the most careful scrutiny of the evidence alleged to have been discovered, and when it raises a violent presumption that a different result would be reached upon a second trial. Thompson Trials, section 2759; *Hines* v. *Driver*, 100 Ind. 315.

It is shown that two or three of the jurors, accompanied by a sworn bailiff, went from the room in which the jury were deliberating to the water-closet. The affidavit of the bailiff shows that they were not absent to exceed three or four minutes; that they were in his charge all the time, and that no communication was made to them, and that they were guilty of no misconduct.

A separation by one or more jurors for a necessary purpose, attended by the proper officer, is not such misconduct as entitles a party to a new trial. *Riley* v. *State*, 95 Ind. 446.

The foregoing are all the points that are presented in such a manner as to require notice. There was no error.

The judgment is affirmed, with costs.

