RECTOR ET AL. *v.* STATE OF INDIANA

[No. 25,953. Filed May 4, 1934. Rehearing denied April 27, 1937.]

*Walterhouse & Miller, R. W. Lennington & Sons,* and *Richard L. Ewbank,* for appellants.

*James M. Ogden,* Attorney-General, *Henry R. Wilson, and Robert L. Bailey,* Assistant Attorneys-General, for the State.

TREANOR, J.—Appellants were convicted of illegally possessing a still. The sole error assigned is the overruling of their motion for new trial which motion relied upon the following causes:

1. Newly discovered evidence.
2. That the verdict is not sustained by sufficient evidence.
3. That the verdict is contrary to law.

The following summary of the evidence received upon the trial below will be sufficient for a complete consideration of the propositions relied upon for reversal:

Appellants lived in a two and one-half story house situated on the northeast corner of Centennial Avenue

and Wolfe street, Muncie. Their two-car garage faced Wolfe street which ran along the west side of their house. An old Ford coupe stood partly on Wolfe street and partly on appellants' premises between their house and garage. On the date of the alleged offense police officers made a search of appellants' premises. In the back part of the Ford they found the boiler of a still. The boiler was wet on the inside and smelled of whiskey. It had soot in three places on its bottom, indicating it had been over three burners. A can containing a mixture of yeast and rye, which smelled like mash, was found near a shed in the rear of the premises and there was an odor of mash throughout the house and basement. Behind the baseboard of a closet opening from the northwest room on the second floor of the house officers found a small boiler cap and two heavy white felt pads, strainers, which smelled of intoxicating liquor. Woman's dresses and shoes were in the northwest room and appellant Mae Rector went to that room later to change her dress before accompanying the officers. In a pantry adjoining the bathroom officers found about 20 empty sugar and rye flour sacks. The attic was sealed with celotex, contained a heating stove and had water piped to it from the bathroom below. A piece of hose, ten or fifteen feet long, was attached to a spigot or faucet on the water pipe. A 6 inch vent pipe, with an opening in it, passed through the attic. In the attic the officers found half a sack of rye flour, several pieces of copper tubing, a lard can containing water and rags, which smelled like mash, 3 pint bottles, a graduated glass or whiskey gauge. In the basement they found a 3-burner gasoline stove lying on its side and an air pump, about 200 barrel staves that were wet. Some were charred on the inside and covered with a white substance and

some were broken. They also found some waste paper among which were some slips upon which were written the words malt, barrels, yeast, coal, hose, lard cans, gauge, sugar and gas. There were also sales slips for a saddle, hose, solder, gas elbow for stove, celotex and nails.

Appellants introduced evidence to the effect that the northwest room, in which the cap and felt strainers were found, had been occupied exclusively, for more than two weeks prior to the day before the search, by a roomer, Bob Marshall; that Marshall left on the day before the search and had not been heard from since; that the papers found in the basement were taken from his waste basket; that the attic had been used to repair aeroplane motors to which the copper tubing belonged; that the water and rags in the lard can had been used the day before to mop the attic; that the so-called whiskey gauge was a rose-bud vase; that the water was piped to the attic for fire protection; that the rye flour had been brought to the house a long time before from a grocery store previously operated by appellants; that the 20 flour and sugar sacks were intended for dish rags; that the barrel staves were from pickle barrels, were intended for kindling and that the appearance of the staves and the odor of the staves and basement, which was described by state's witnesses as whiskey mash odor, was due to the fact that the basement had been flooded for several days as a result of a stoppage of the drain tile. Appellants denied all connection with or knowledge of the boiler and produced several witnesses who testified, in substance, that they had been in various parts of the house and basement frequently before the date of the alleged offense and that they did not see or smell anything to indicate the presence of a still, mash or intoxicating liquor.

We cannot resolve conflicts of evidence, and since we must consider only the evidence favorable to the State, we are forced to hold that the evidence was sufficient to sustain the verdict.

In support of their contention that a new trial should be granted for newly discovered evidence, appellants' motion was accompanied by the affidavit of one ██ Ralph Miller. The affidavit, insofar as it is material to this appeal, alleged in substance that he had moved from Muncie to Dayton, Ohio, shortly before the search involved; that he had no knowledge of the charge against appellants until after their trial and conviction; that on January 12th, two days before the date of the alleged offense, he was in Muncie and met Bob Marshall in a restaurnat; that Marshall asked to borrow $10.00 and told Miller that he had a still which he would turn over as security; that Marshall took affiant to the old Ford on the Rector premises, removed from it a copper boiler and showed the boiler to Miller, telling him that he could supply the additional part required; that Marshall then replaced it in the Ford; also that Marshall asked Miller to not say anything to Mr. or Mrs. Rector about the still as he didn't want them to know about it. The affidavit also alleged facts showing that the affidavit was purely voluntary and unsolicited; that he had sent Mrs. Rector a letter by air mail on July 5th, detailing the above facts and had consulted an attorney on July 8th, before communicating with appellants' attorneys.

This court has frequently had before it the question of abuse of discretion of the trial court in refusing to grant a new trial on the ground of newly discovered evidence. The substance of the statements of this court upon that question is that the newly discovered evidence must be so convincing as to raise a "violent presumption

that a different result would be reached upon a second trial" before we will overrule the judgment of the trial court. *Cooper* v. *State* (1889), 120 Ind. 377, 22 N. E. 320. The trial court should, of course, grant a new trial if it appears to him that it is probable that the newly discovered evidence would produce a different result in case of a new trial. But before we can say that a trial court has abused its discretion in the matter it must appear to us that the trial court could not reasonably have concluded that it was not probable that the newly discovered evidence would have such an effect.

Some of the evidence introduced by appellants during the trial was obviously for the purpose of raising the inference that Bob Marshall, a roomer at appellants' home, had possession of the still, if anyone did. The case, as made by the state's evidence, depended upon convincing the jury that the still had been dismantled a few hours before the search and that, at that time, the "boiler" had been placed in the automobile. The newly discovered evidence did not purport to account for the location of the "boiler" during the two days' period between Sunday and the time of the search late in the afternoon of the following Tuesday. At the most the newly discovered evidence was merely cumulative and, when considered in connection with the evidence given on the trial, we cannot say that the trial court abused its discretion in deciding that the newly discovered evidence was insufficient to justify the granting of a new trial.

Judgment affirmed.

### On Petition for Rehearing

Treanor, J.—Pending appellants' petition for a rehearing this court authorized the Circuit Court of Delaware County to entertain jurisdiction of appellants' petition for a writ of error *coram nobis*. The Delaware

Circuit Court has certified to this court a copy of the record of the hearing and its conclusions that "the evidence adduced upon the trial of the petition for writ of error *coram nobis* fails to establish the facts alleged and set forth in said petition," and that "the defendants are not entitled to the relief prayed therein."

The petition for a rehearing earnestly urges that the trial court should have granted a new trial (1) because of the insufficiency of the evidence, and (2) because of newly discovered evidence.

The vehemence of the language employed in briefs supporting the petition for rehearing, can only be understood by assuming that able counsel of appellants seriously believe that a great wrong has been done their clients as a result of this court's failure to grasp the significance of the evidence and to understand and properly apply thereto the rules of law which should guide this court as a reviewing court.

A careful reading of the briefs discloses that no small part of counsel's inability to understand our decision, and supporting opinion, is due to counsel's failure to distinguish between the functions of a trial court and that of a reviewing court. In fairness to counsel, however, it must be stated that they have cited and relied upon expressions of this court which seem to support their contentions, and to justify their preplexity in the instant case.

In *Cavender* v. *The State*,[1] which is cited by appellant, this court discussed at length the test for the determination of the value of circumstantial evidence in respect to its sufficiency to warrant a conviction in a criminal case; and it was stated that proof resting upon circumstantial evidence "must not only coincide with the hypothesis of guilt, but it must be inconsistent with

1. (1890), 126 Ind. 47, 75 N. E. 875.

every other rational conclusion." And the opinion in the Cavender case contained the following statement (p. 48) : "The force of circumstantial evidence being exclusive in its character, the mere coincidence of a given number of circumstances with the hypothesis of guilt, or that they would account for, or concur with, or render probable the guilt of the accused, is not a reliable or admissible test, unless the circumstances rise to such a degree of cogency and force as, in the order of natural causes and effect, to exclude, to a moral certainty, every other hypothesis except the single one of guilt."

But in *Wrassman* v. *State*[2] this court pointed out that the test announced in the Cavender case was a test to be applied by the trial court, and in so doing used the following language: "If the language used by Judge Mitchell in the Cavender case was intended to convey the impression that where there are two *reasonable* hypotheses arising from circumstantial evidence, one of which is innocence and the other guilt, that it is the duty of a court of review to draw the inference of innocence, then this language must be disapproved. If it is meant to be pronouncement of the law which should govern juries and trial courts, then it is approved." In the Wrassman case this court stated that a complete lack of one essential link in the chain of circumstances would require this court to hold the evidence insufficient; but it was also pointed out that ". . . where each *essential* link in the chain of circumstances is there, and the jury or the trial court can reasonably draw the inference of guilt, the conviction must be allowed to stand, however weak the links in the chain may seem to the court of review." The test to be applied by this court is indicated by the following statements from *Wrassman* v. *State,* p. 403: "If, from the same

2. (1921), 191 Ind. 399, 132 N. E. 673.

chain of circumstances, an inference of guilt may reasonably be drawn, or an inference of innocence may reasonably be drawn, then the question on review is one of fact; but if an essential link is wanting, or an inference drawn from a link, or from the whole chain, which is wholly contrary to human experience and the natural relation of things, then the question is one of law. When this view is taken, we think that the cases to which we have referred all may be reconciled." The court further states, p. 404: "From these circumstances the trial court inferred guilt. He may have been mistaken in so doing, but we cannot say that this conclusion is contrary to reason and human experience, or that there is lacking an essential link in the chain of circumstances."

In *Hamilton* v. *State*[3] the opinion contains the following: "Where the evidence leaves standing some reasonable hypothesis of innocence there can be no conviction, and when the record discloses that fact to the appellate tribunal, a judgment of conviction cannot be affirmed." In the later case of *Lee* v. *State*[4] this court expressly disapproved *Hamilton* v. *State* and differentiated between the function of the trial court and an appellate tribunal, in respect to errors of fact, in the following language: "A review and relief from an error of fact into which a jury upon a trial of a cause may have been led, is, under the law of this State, confined alone to the trial court, and it is only when there is an absence of evidence to support some fact or facts essential or material to the judgment that the question arising in respect to such facts becomes a matter of law and subject to be reviewed and corrected on appeal to this court. The fact that the evidence upon which the

3. (1895), 142 Ind. 276, 41 N. E. 588.
4. (1900), 156 Ind. 541, 60 N. E. 299.

judgment of the trial court rests may be said to be weak or unsatisfactory is not available on appeal, for if there is evidence to sustain the judgment in every material respect we are bound to accept it, and are not authorized to invade the province of the trial court and disturb the judgment upon the question of the weight of the evidence."

The real, or apparent conflicts, in the language contained in the opinions of this court on the question of sufficiency of evidence to support the verdict in a criminal case, are due to the fact that this court has not stated expressly in each instance whether the language used was intended to apply to review by this court or to a review of the evidence by the trial court on a motion for a new trial; or to the statement of the law as embodied in instructions to guide the deliberations of the jury. The Wrassman case, *supra,* clearly indicates the test which this court must apply. That test may be stated as follows: (1) Was the inference of guilt contrary to reason and human experience; or (2) was there lacking an essential link in the chain of circumstances. And we understand that by lack of an essential link in the chain of circumstances is meant that there is no evidence of fact or facts tending to establish the existence of one or more of the essential elements of the crime charged.

In *Gears* v. *State*[5] it was urged that "circumstantial evidence to sustain a conviction must exclude every reasonable hypothesis of the innocence of the accused." In discussing that contention this court commented as follows: "That is a correct statement of a rule for the guidance of the trial court, and is simply another form of the rule that the jury must be convinced beyond a reasonable doubt of the guilt of a defendant. For if,

5. (1932) 203 Ind. 380, p. 393, 180 N. E. 585.

after considering all the evidence, a juror's mind enter-
tains reasonably a hypothesis of innocence, it cannot be
said that his mind is convinced of the guilt of the de-
fendant beyond a reasonable doubt."

In connection with the foregoing statement this court
adopted the language of the opinion in *Wrassman* v.
*State, supra.* (See *Gears* v. *State, supra*, p. 393-395.)

In view of the evidence which is contained in the
record of this appeal it is impossible for us to conclude
that the inference of guilt is "contrary to reason and
human experience;" and it is equally impossible to say
that "there is lacking an essential link in the chain of
circumstances."

It is especially urged on behalf of appellant Frank
Rector that he was not at home at the time of the search
of the Rector premises and had been there only a few times
during a period of several weeks prior to the date of
the search. According to his own testimony and that of
Mae Rector he was at home on Friday and Sunday next
preceding the Tuesday on which the search of the house
was made. Assuming that the jury concluded that a
still had been in operation in the attic of the Rector
home, and that this still had been dismantled just
prior to the search on Tuesday, January 14, we can not
say that there was not sufficient evidence to justify the
jury's finding that such still had been possessed by
Frank Rector and Mae Rector.

As already stated we cannot say that there was not
sufficient evidence to justify the jury's conclusion that
a still had been in operation on the Rector premises and
had been dismantled just prior to the search by the of-
ficers on Tuesday, January 14. The absence of evidence
tending to show that Frank Rector was continuously at
home and in a position to continuously control the still
is not inconsistent with his having legal possession of

the still through his ownership and right of control of the premises on which the state claims the still was located.

In our original opinion in this appeal it was distinctly stated that a trial court should grant a new trial if it appears to the trial court that it is probable that the newly discovered evidence would produce a different result in case of a new trial. And it was also stated that this court will not overrule a judgment of the trial court unless the newly discovered evidence is so convincing as to raise a "violent presumption that a different result will be reached upon the second trial." We think those statements accurately indicate the difference between the test to be applied by an appellate tribunal and the trial court. Appellants seem to be laboring under the impression that our language was intended to prescribe the "violent presumption" test for the trial court. Even a superficial reading of the language of the opinion would dispel any such impression.

The statutory provision which makes newly discovered evidence grounds for a new trial reads as follows:[5a] "The court shall grant a new trial to the defendant for the following causes, or any of them: ... Eighth. Newly-discovered evidence, material for the defendant, which he could not, with reasonable diligence, have discovered and produced at the trial." And it is within the sound discretion of the trial court to determine (1) whether the newly discovered evidence is material for the defendant, and (2) whether the defendant could have discovered and produced such evidence at the trial by the exercise of reasonable diligence.

In *Anderson* v. *State*[6] this court stated that the granting of a motion for a new trial on the ground of newly

---

5a. §9-1903 Burns' Ind. Statutes Annotated, §2310 Baldwin's 1934, Acts 1905, ch. 169, §282, p. 584.
6. (1928), 200 Ind. 143, 161 N. E. 625.

discovered evidence rests in the discretion of the trial court, and stated further that: "The newly-discovered evidence, in order to warrant the granting of a new trial, must be very material and decisive in character and be such as to raise a strong presumption that it, in all probability, will bring about an opposite result on another trial." In support of the foregoing statement the following cases were cited: *Hines* v. *Driver* (1885), 100 Ind. 315; *Ludwig* v. *State* (1908), 170 Ind. 648, 85 N. E. 345; *Donahue* v. *State* (1905), 165 Ind. 148, 74 N. E. 996; *Cooper* v. *State* (1889), 120 Ind. 377, 22 N. E. 320; 20 R. C. L. 290.

The test which the trial court should apply to determine the materiality of newly discovered evidence is whether such evidence probably would produce a different result upon a second trial. But in evaluating the probable probative force of the newly discovered evidence the trial court must appraise such evidence in the light of all the evidence upon which it reached its verdict. (*Morton* v. *State* [1935], 198 N. E. 307, 209 Ind. 159.)

It was stated in the opinion that before we can say that a trial court has abused its discretion in refusing to grant a new trial on the ground of newly discovered evidence it must appear to us that the trial court could not reasonably have concluded that it was not probable that the newly discovered evidence would produce a different result in case of a new trial. And applying that test we are still of the opinion that we can not say that the Delaware Circuit Court was wrong in concluding that the newly discovered evidence was not sufficient to justify the granting of a new trial.

Petition for rehearing denied.