MARSHALL *v*. STATE OF INDIANA.

[No. 769S156. Filed May 27, 1970. Rehearing denied July 29, 1970 and September 8, 1970.]

*John M. Lyons,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *Aaron T. Jahr,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant was charged by affidavit with the crime of rape. Upon a plea of not guilty, trial was had before a jury which returned a verdict of guilty. Thereafter, appellant was sentenced to the custody and control of the Superintendent of the Indiana Reformatory at Pendleton for a period of not less than two (2) nor more than twenty-one (21) years.

Two questions are raised on this appeal by the trial court's overruling of appellant's motion for new trial, the first concerning the constitutional guarantee to a public trial and the second involving the question of newly discovered evidence. We shall deal first with defendant's right to a public trial.

The Indiana Constitution at Art. 1, § 13 provides that:

"In all criminal prosecutions, the accused shall have the right to a public trial, . . ."

The federal counterpart to this state guarantee is found in the Sixth Amendment to the United States Constitution. Unlike many of the rights conferred by the first eight amendments to the United States Constitution, it would appear that the Sixth Amendment right to a public trial has not been specifically incorporated under the due process clause of the Fourteenth Amendment. This statement is made notwithstanding the case of *Duncan* v. *Louisiana* (1968), 391 U. S. 145, 20 L. Ed. 2d 491 which purports to list the rights contained in the first eight amendments which have been held to be protected against state action under the Fourteenth. Although the right to a public trial was included in that listing, the case relied on, *Re Oliver* (1948), 333 U. S. 257, 92 L. Ed. 682, merely held that a deprivation of the right might be violative of due process; the Sixth Amendment per se was not the basis of the decision nor was there any indication in the opinion that the court intended to specifically incorporate the amendment as it has subsequently done with regard to other rights contained in the first eight amendments.

We make note of this "accidental incorporation" for the purpose of establishing that this court is not, as of yet, bound by the United States Supreme Court's interpretation of the right except insofar as it might be said that there was a deprivation of due process under the Fourteenth Amendment.

The importance of the right and the reasons for its jealous preservation were noted by Justice Black in the case of *Re Oliver, supra,* wherein it was said:

> "The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet. All of these institutions obviously symbolized a menace to liberty. In the hands of despotic groups each of them had become an instrument for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial. Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the

guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power. One need not wholly agree with a statement made on the subject by Jeremy Bentham over 120 years ago to appreciate the fear of secret trials felt by him, his predecessors and contemporaries. Bentham said: '. . . suppose the proceedings to be completely secret, and the court, on the occasion, to consist of no more than a single judge,—that judge will be at once indolent and arbitrary: how corrupt soever his inclination may be, it will find no check, at any rate no tolerably efficient check, to oppose it. Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance.' " 333 U. S. at 268-271, 92 L. Ed. at 691-693.

Although opinion is unanimous that the right to a public trial is basic to this country's criminal jurisprudence, there is less agreement as to exactly what constitutes such a "public" trial. Various questions have been raised over the years in regard to the nature of the right and the extent to which it must be preserved in special circumstances. It is generally conceded that portions of the *general* public may, in certain instances, be excluded but courts normally have demonstrated a reluctance to do so unless it be required for the proper administration of justice. See annotations at 48 A. L. R. 2d 1436; 4 L. Ed. 2d 2128; also 21 Am. Jur. 2d, *Criminal Law* § 257 *et seq.* (1965).

In the trial for a sex offense, as is here the case, there has been some disagreement as to the extent the "public" may be excluded. Although it might be said that there is no general rule in this regard, many courts have held that, because of the nature of the offense and the type of evidence which will be elicited, youthful spectators may be excluded. See numerous cases cited at 48 A. L. R. 2d 1436, 4 L. Ed. 2d

2128. Even this approach may be carried too far, however, as noted by the Alabama court in the case of *Reynolds* v. *State* (1961), 41 Ala. App. 202, 126 So. 2d 497.

In the instant case the judge ordered all members of the "public" except the press excluded. Although there is a substantial question in this court's mind as to whether or not such action constituted a deprivation of the right to a public trial, especially where none of the appellant's relatives or friends were apparently admitted, we deem it unnecessary to decide that question. It is clear from the record that the appellant in this case waived the right. The record shows the following discussion between the trial court and attorneys:

"Comes now the state and makes motion to exclude everyone from the court room and for separation of witnesses, which said oral motion was in the words and figures as follows, to-wit:

MR. CONOVER:
For the record, I did so in chambers, but again I move at this time that the public be excluded from the trial in that the victim, our evidence will show, is 14 years of age and that she will be submitted to imtimidation, (sic) harassment and undue embarrassment if the public is permitted to be in attendance at this hearing. We ask that the press, of course, not be excluded and that this trial be limited in it's (sic) observation to members of the press, the jury, the court officers and the defendant and there will also be a motion for separation of witnesses, not only from this courtroom, but from each other. And, we so move at this time.

MR. LYONS:
May it please the court. My understanding of the Constitution is that a defendant is entitled to a trial which, among other things, is to be public. The defendant would like to ask the court to protect all of his constitutional rights.

THE COURT:
In the light of the age of the prosecuting witness and the possibility of there being untoward results from a public, an open public trial in this case, not excluding the press, the court at this time sustains the motion of the State that all persons other than members of the press, members

of the court attendants be excluded from this courtroom during the taking of evidence and during the voir dire. The court also sustains the Motion for Separation of Witnesses not only in the courtroom, but also elsewhere during the time that this trial takes place.

MR. LYONS:

May it please the court, may I ask that the court's ruling not exclude from the courtroom assistants of mine. I have specifically a law clerk who is present who I may require and a detective.

THE COURT:

We will amend the order to permit the persons that Mr. Lyons has mentioned.

MR. CONOVER:

Also the State would make the same motion as regards assistants of its selection.

THE COURT:

Granted.

MR. CONOVER:

Thank you, Your Honor.

MR. LYONS:

Thank you."

Several comments are appropriate in regard to this exchange. First of all, no objection was made to the court's ruling. Immediately following the state's motion, attorney for the appellant indicated that he desired to have all of his client's constitutional rights protected. Following these remarks, the trial judge entered his order as above set out. Defense counsel made no objection to this order, except to request that certain specified individuals be allowed to remain, which request was promptly granted. In view of the fact that appellant made no further comment or objection, it would seem reasonable to conclude that such silence constituted a waiver insofar as the right to the presence of other individuals was concerned. Although we do not deem this factor conclusive, when coupled with the following indicia a waiver is apparent. That the right may

be waived has already been established by this court. *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. 2d 809.

Secondly, the tenor of the remarks above set out clearly indicates appellant's satisfaction with the ruling. Coupled with the fact that no objection was made following the court's order is the fact that he requested that the court only except two individuals from the ruling. There is no evidence in the record that appellant had close friends or relatives that he wished to be present. Consequently, with no objection and no request for the presence of other individuals thought vital to appellant's interests, it must be concluded that appellant consented to be tried with only those specifically admitted by court order present.

Finally, we note that appellant here makes no assertion that trial counsel was incompetent. It has long been the law in Indiana that a constitutional right may be waived and where appellant has competent counsel a failure to assert the right constitutes such a waiver. *Allman* v. *State* (1968), 253 Ind. 14, 235 N. E. 2d 56; *Ford* v. *State* (1967), 248 Ind. 438, 229 N. E. 2d 634; *Capps* v. *State* (1961), 242 Ind. 165, 177 N. E. 2d 457; *Dowling* v. *State* (1954), 233 Ind. 426, 118 N. E. 2d 801; *Irwin* v. *State, supra.* Without any allegation to the contrary, we must presume that appellant was adequately represented and that the waiver was willingly made with a full appreciation of its nature. That being so, appellant cannot be heard on this appeal to complain of a deprivation of the right to a public trial.

We next turn to the question of whether a new trial should be ordered because of appellant's allegation of newly discovered evidence. To justify a new trial on such a basis this court has said on numerous occasions that the newly discovered evidence must be material and decisive in character and be such as to raise a strong presumption that it will, in all probability result in an opposite conclusion on another trial. *Spears* v. *State* (1970), 253 Ind.

364, 254 N. E. 2d 196; *Fultz* v. *State* (1968), 250 Ind. 43, 233 N. E. 2d 243; *Ward* v. *State* (1956), 235 Ind. 531, 135 N. E. 2d 509; *Rector* v. *State* (1934), 211 Ind. 483, 190 N. E. 172; *Anderson* v. *State* (1928), 200 Ind. 143, 161 N. E. 625.

To substantiate his claim that a new trial is justified, appellant points to the fact that one Ricky Smith has, since the trial, been charged with a criminal offense arising out of an independent rape of another girl. It is appellant's contention that this fact, coupled with Mr. Smith's apparent sexual proclivities would have, in all probability, affected the verdict of the jury. Appellant, however, at the trial of this offense attempted to show that Smith was the guilty party by showing that he had been with the victim on the evening of the offense and indeed was alone with her for a sufficient period of time to allow for intercourse. Obviously the jury rejected this theory and we fail to see how evidence that Smith was subsequently charged with an offense resulting from the rape of another girl would in any way alter their view of the facts in the present case. The evidence clearly established that appellant was also with the victim on the evening of the offense and she unqualifiedly identified him as her assailant. We see no reason to indulge in speculation at this point.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn and Given, JJ., concur; DeBruler, J., dissents with opinion in which Jackson, J., concurs.

## DISSENTING OPINION

DeBruler, J.—I dissent from the majority holding that Appellant waived his Sixth Amendment right to a public trial. The majority opinion infers the waiver from Appellant's failure to object to the trial court order after it was made. The Appellant's objection to the prosecutor's motion was prop-

erly made after the prosecutor made his motion, and reads as follows:

"*   *   *   *   *   *   *   *   *   *   *   *   *

MR. LYONS:

May it please the court. My understanding of the Constitution is that a defendant is entitled to a trial which, among other things, is to be public. The defendant would like to ask the court to protect all of his constitutional rights.

*   *   *   *   *   *   *   *   *   *   *   *   *"

This objection was offered to the trial court for its consideration *prior* to its ruling. That is the normal and most rational procedure. In addition, a party does not have to object or take an exception to a trial court *ruling* or order in order to preserve the error on appeal. An objection is properly made to opposing counsel's motions, petitions, or questions and that is exactly what Appellant's counsel did here. He could and need not do anything further to preserve that alleged error on appeal once the trial court ruled against him. Thus there was no "silence" from which the majority opinion may infer a waiver.

Even if Appellant had remained silent, I believe it is error to infer a waiver of a fundamental right from mere silence. This proposition has been stated too often to require extensive treatment. *Johnson* v. *Zerbst* (1937), 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357. *Fay* v. *Noia* (1963), 372 U. S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822.

The majority attempts to support its waiver argument by holding that Appellant "consented" to the trial court order by requesting that his law clerk and a detective be excluded from the effect of the trial court ruling. I believe this is also erroneous. It is obvious that Appellant's attorney's request was to permit him to retain two persons in the courtroom whose presence was necessary to the attorney for proper defense of the case. It was in no sense an offer to compromise the trial court ruling on the public trial issue. On that issue,

Appellant objected at the proper time and lost the argument when the trial court ruled against him. There was no procedural step he could or needed to take to preserve the error on appeal. What was he to do, refuse to go on with the trial? Appellant's counsel did what any good attorney would have done. He lost on his objection and he proceeded to make the best of that situation by attempting to keep his assistants with him. A defense attorney should be permitted to lose an objection and be free to make the next tactical move available to protect his client's rights. Of course, Appellant makes no assertion that trial counsel was incompetent; in my view, counsel at trial represented his client adequately and I fail to see how his *failure* to claim otherwise is relevant to this case.

Jackson, J., concurs.

NOTE.—Reported in 258 N. E. 2d 628.