**In the Matter of the Petition For the Commitment of John Joseph TEDESCO To a Psychiatric Hospital.**

No. 1–880A210.

Court of Appeals of Indiana,
First District.

June 16, 1981.

Rehearing Denied July 27, 1981.

Mark S. Goldstein, Legal Services Organization of Indiana, Inc., New Albany, Peter L. Cassady, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. (Janis L. Summers, Deputy Atty. Gen., Indianapolis), for appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

John Tedesco (Tedesco) appeals from the order of regular commitment entered by the Clark Circuit Court. Judgment affirmed.

## STATEMENT OF THE FACTS

On January 28, 1980, John Tedesco, Sr. filed a petition in Clark Circuit Court for the involuntary regular commitment of his son, Tedesco, for a period to exceed ninety days. The petition alleged that Tedesco talked to dead relatives, threatened to kill his father and brothers, and was suicidal. A statement by a physician, which stated that Tedesco was dangerous or gravely disabled, accompanied the petition. A hearing date on the petition of February 11, 1980, was set by the Clark Circuit Court on January 28, 1980. Also on January 28, the court ordered the Clark County Sheriff to take Tedesco into custody and convey him to the Madison State Hospital, which was done. Following Tedesco's detention in the Madison State Hospital, Dr. Edwin L. Libbert filed a "report following emergency detention" with the Clark Circuit Court. This report stated that Dr. Libbert found probable cause to believe that Tedesco was suffering from a psychotic disorder and was dangerous. Dr. Libbert recommended that Tedesco be detained in the facility pending a hearing. On February 11, 1980, at the hearing on the petition for regular commitment, Tedesco filed a motion to dismiss, which was denied. The hearing proceeded and Tedesco was ordered committed to Madison State Hospital.

## ISSUES

The following issues, which we have restated, have been raised for our consideration:

(1) Whether the trial court had the legal authority to detain Tedesco prior to the hearing on the petition for regular commitment.

(2) Whether the trial court erred in denying Tedesco's motion to dismiss.

(3) Whether the prehearing detention of Tedesco violates due process.

## DECISION

*Issue One*

█ Pursuant to Ind. Code 16–14–9.1–3 an individual may be involuntarily detained or committed only according to emergency detention, temporary commitment, or regular commitment procedures. Tedesco argues that under these three methods of involuntary commitment, the only legal authority for taking an individual into custody and detaining him or her prior to a judicial hearing is found in the Emergency Detention Statute.[1] Since there was no applica-

---

1. Indiana Code 16–14–9.1–7 reads:

   "A person may be detained in a psychiatric hospital or center for a period not exceeding seventy-two (72) hours, excluding Saturdays, Sundays, and legal holidays, as follows:

   (a) Written application must be made to a hospital or center by a health or police officer or other individual. The application must:

tion for the emergency detention of Tedesco, he contends the trial court was without legal authority to detain him prior to a hearing.[2] Tedesco has overlooked the language of IC 16–14–9.1–3 which states: "However, upon the filing of a petition for an involuntary commitment, the court may order the person's detention in an appropriate facility pending the commitment hearing." Clearly this statutory provision gives the trial court the authority to detain an individual prior to the hearing on a petition for regular involuntary commitment. Tedesco's argument that a trial court has no authority to order prehearing detention of an individual unless such detention is done pursuant to IC 16–14–9.1–7 is without merit.

*Issue Two*

Tedesco, on the day of the hearing on the petition for regular commitment, filed a motion to dismiss the petition on the basis that the trial court had failed to comply with IC 16–14–9.1–7 and therefore, the court lacked jurisdiction of the particular case. Again, the crux of Tedesco's argument on this issue is that the trial court was required to follow the provisions of the Emergency Detention Statute when it had Tedesco detained prior to a hearing. The State, on the other hand, alleges that the trial court had jurisdiction over both the subject matter and the particular case since

> (1) *state the applicant's belief that the person is mentally ill and dangerous and in need of immediate restraint; and*
> (2) *contain a written statement by at least one (1) physician that, based on an examination or based on information given him, the person may be mentally ill and dangerous. The application, upon indorsement by a judicial officer authorized to issue warrants for arrest in the county in which the person is present, shall authorize any police officer to take the person into custody and transport him to the hospital or center to be detained, examined and given such emergency treatment as necessary for the preservation of the health and safety of the patient and the protection of persons and property. The expense of transportation shall be borne by the county in which the person is present."*

2. Tedesco then goes on to argue that assuming his detention was proper as an emergency seventy-two hour detention under IC 16–14–9.1–7,

the statutory procedures for a regular commitment set out in IC 16–14–9.1–10 (Supp. 1980) were followed.[3] We agree with the State. As we held in Issue One, the trial court could order Tedesco detained without using the emergency detention procedure. Since the proceeding was one for the regular commitment of Tedesco, the trial court did not have to follow the requirements of IC 16–14–9.1–7, which is the emergency detention statute. The trial court properly denied Tedesco's motion to dismiss since the regular commitment proceeding was commenced as required by statute.

*Issue Three*

Tedesco alleges that his fourteen day detention in Madison State Hospital without a hearing violated the due process clause of the United States Constitution. U.S.Const. amend. XIV, § 1. Specifically he contends that once he was detained, due process requires a probable cause hearing as soon as possible after his detention to determine the validity of the detention. Because the trial court had him detained for fourteen days without a hearing, Tedesco posits that we should dismiss the trial court's order committing him to Madison State Hospital. We agree that Tedesco's detention without a hearing violated his due process rights; however, we do not find that such a violation requires reversal of the trial court's judgment in this case.

his detention beyond seventy-two hours was illegal since it failed to meet the other requirements of IC 16–14–9.1–7. We need not address this argument since we have determined that Tedesco was not detained pursuant to the emergency detention procedures.

3. Tedesco, in his reply brief, argues that a regular commitment proceeding was not commenced since the physician's statement which accompanied the petition for regular commitment made no reference to the fact that custody was expected to exceed ninety days. Such a statement is required by IC 16–14–9.1–10(b)(2) (Supp.1980). However, any issue as to an alleged defect in the documents which commenced the regular commitment proceedings has been waived by Tedesco since he failed to include such error in his motion to correct errors. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

In the recent case of *Vitek v. Jones,* (1980) 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552, the United States Supreme Court once again recognized that commitment proceedings are subject to due process requirements. Justice White writing for the court stated at 445 U.S. at 491–92, 100 S.Ct. at 1263, 63 L.Ed.2d at 564:

"We have recognized that for the ordinary citizen commitment to a mental hospital produces 'a massive curtailment of liberty.' *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972), and in consequence 'requires due process protection.' *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *O'Connor v. Donaldson,* 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (BURGER, C.J., concurring). The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that '[w]hether we label this phenomena "stigma" or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual.' *Addington v. Texas, supra,* [441 U.S.] at 425–426, 99 S.Ct., at 1809. See also *Parham v. J.R.,* 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979). Also '[a]mong the historic liberties' protected by the Due Process Clause is the 'right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security.' *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977)."

Since due process attached to Tedesco's liberty interest, we must now determine what process is due and whether procedures provided to Tedesco were adequate. In considering what procedural protections are required by due process, the following analytical framework is helpful:

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. [Citation omitted.]" *Mathews v. Eldridge,* (1976) 424 U.S. 319, 334, 35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33. *See Addington v. Texas,* (1979) 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323.

The private interest in the present case is twofold. Tedesco has a vital interest in being protected from unjustified and significant deprivations of his personal liberty. In addition, since the entry into a mental hospital can bring about adverse social consequences to the individual, Tedesco has an interest in being protected from any stigma which might arise as a result of detainment in a mental hospital.

Second, the risk of erroneous deprivation of these private interests is relatively high in the present case. Once a petition for direct proceedings of a regular commitment is filed, the trial court may order the individual detained pending a hearing. The main content of the petition is a physician's statement that the person is mentally ill and either dangerous or gravely disabled and in need of custody, care, or treatment. Therefore, the only safeguard used is the opinion of one physician without opportunity for anyone, including the alleged mentally ill individual, to question that opinion. Clearly certain procedures, such as a hearing with the alleged mentally ill individual present with counsel, would reduce the risk of an erroneous conclusion. Such a procedure would allow the individual or counsel to question the opinion of the physician to insure that the detention was necessary.

■ With regard to the state's interest, we concede, as stated in *Lessard v. Schmidt,* (E.D.Wis.1972) 349 F.Supp. 1078, 1091, *vacated and remanded on procedural grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661

(1974), *new judgment entered,* 379 F.Supp. 1376 (E.D.Wis.1974), *vacated and remanded for consideration in light of Huffman v. Pursue, Ltd.,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *reaff'd,* 413 F.Supp. 1318 (E.D.Wis.1976), "that the state may sometimes have a compelling interest in emergency detention of persons who threaten violence to themselves or others for the purpose of protecting society and the individual, [citation omitted]." However, in light of the significant risk of an erroneous conclusion and the individual's compelling interest in liberty, such an emergency detention can be justified only for a reasonable length of time in order to arrange for a hearing to determine whether probable cause for the detention exists. *See In re Barnard,* (D.C.Cir.1971) 455 F.2d 1370; *Bell v. Wayne County General Hospital at Eloise,* (E.D.Mich.1974) 384 F.Supp. 1085; *Lessard v. Schmidt, supra.* In the present case, Tedesco was detained for fourteen days without being afforded such a hearing. We find this period of detainment without a probable cause hearing to be unreasonable. Therefore, we hold that the prehearing detainment of Tedesco violated his due process rights.

■ Before discussing what relief is appropriate in the present action, we note that the provision of the Indiana Code which allows for the prehearing detainment in a regular commitment proceeding, *i. e.,* IC 16–14–9.1–3, does not require any of the procedures which we have found to be required by due process. Tedesco did not challenge the constitutionality of this statute and our holding does not find the statute to be facially unconstitutional. Nevertheless, in the future, in order for a trial court to order an individual detained pending a regular commitment hearing, a probable cause hearing must be afforded the individual within a reasonable time. We do not specify the precise length of time an individual may be held before a probable cause hearing must be held. However, we find the time limitations prescribed in the emergency detention statute, IC 16–14–9.1–7, to be appropriate. The hearing must be preceded by written notice to the person alleged to be mentally ill of the grounds for his or her detention and the time, place, and date of the hearing. At the hearing, the person alleged to be mentally ill has a right to be present, to be represented by counsel, to present evidence, and to cross-examine witnesses. If probable cause is found to detain the person who is alleged to be mentally ill, then the full hearing on the petition for regular commitment must be held as soon after detention as possible, for probable cause does not justify a prolonged period of confinement without a full hearing.

Tedesco argues that the failure to provide him with a probable cause hearing requires dismissal of the proceedings. He bases this argument upon two separate contentions: (1) the trial court failed to assume jurisdiction over his case since it did not comply with the procedures for emergency detention found in IC 16–14–9.1–7, and (2) dismissal will protect his due process rights. We find both contentions to be without merit.

■ The failure of the trial court to hold a probable cause hearing for Tedesco did not deprive the trial court of jurisdiction. This contention is once again based upon the premise that the trial court was required to act according to IC 16–14–9.1–7 when it ordered Tedesco detained. As we discussed in Issue One, the trial court had the authority pursuant to IC 16–14–9.1–3 to order Tedesco detained once a petition for involuntary commitment was filed. Since a petition for regular involuntary commitment was filed pursuant to IC–16–14–9.1–10 (Supp.1980) by Tedesco's parents, the procedures prescribed by statute were met, and the trial court had jurisdiction of Tedesco's case.

In order to support his contention that dismissal is required to protect his due process rights, Tedesco compares the "exclusionary rule" and the "speedy trial rule" to the present situation. We find neither rule to be sufficiently analogous to warrant dismissal. The exclusionary rule does not afford automatic dismissal to a criminal defendant, but instead excludes the illegally

seized evidence from being used in the criminal prosecution. If the *only* evidence introduced during a criminal trial which could support a conviction had been illegally seized, then reversal may be required if the error was sufficiently preserved for appeal. However, such reversal is required because the prosecution failed to meet its burden of proof and not *solely* because the evidence was illegally seized.

We do agree with Tedesco that the right to a speedy trial is an important safeguard to prevent oppressive incarceration prior to trial. *Shack v. State*, (1972) 259 Ind. 450, 288 N.E.2d 155. However, the infringement of such a right does not always compel the discharge of the defendant without a trial. A criminal defendant may waive his or her right to a speedy trial by agreeing to the trial date or by failing to object soon enough after the time for trial is fixed. *Bailey v. State*, (1979) Ind.App., 397 N.E.2d 1024, *trans. denied; Hardy v. State*, (1976) 170 Ind.App. 602, 354 N.E.2d 342.

Tedesco has not exhibited sufficient reason for us to order a dismissal of the commitment proceedings. Contrary to his contention, a dismissal of the proceedings is not required to protect the due process rights of an individual who is alleged to be mentally ill and is detained. Such an individual could seek a writ of habeas corpus for his or her release from an allegedly unlawful detention. This right to apply for a writ of habeas corpus is specifically recognized in Ind.Code 16–14–9.1–14. We note that Tedesco did not exercise this right during his prehearing detention. Absent any indication that the regular commitment hearing was tainted by the prehearing detention of Tedesco, we will not order a dismissal of the proceedings. Tedesco has not challenged the regular commitment hearing as being procedurally defective. Neither has he challenged the sufficiency of the evidence which led the trial court to commit him for a period to exceed ninety days. Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.