**In re the Matter of the Commitment of Rufus Eugene TURNER, Respondent-Appellant.**

**No. 1–282A28.**

Court of Appeals of Indiana, First District.

Aug. 31, 1982.

Stephen J. Moore, Legal Services Organization of Indiana, Inc., Bloomington, Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for respondent-appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Rufus Eugene Turner appeals from his involuntary commitment to the Madison State Hospital. We reverse.

## FACTS

Rufus Eugene Turner was involuntarily committed to the Madison State Hospital by order of the Clark County Superior Court, the Honorable Harry Paynter presiding,

upon application for emergency detention by the Clark County Police Department. Turner was held from May 14, 1981, until the hearing on petition for regular commitment on June 8. The court then found that Turner was in need of commitment "for a period expected to exceed ninety (90) days, or until respondent is discharged or the Court terminates the commitment." Turner appeals from that decision.

## ISSUES

Appellant presents three issues for review, however, two of the issues may be consolidated for purposes of this appeal. The issues, rephrased, are as follows:

1. Did the trial court err in failing to apprise Turner of his due process rights as accorded by the relevant statutes governing involuntary commitment?

2. Did the trial court err in failing to find that Turner was mentally ill?

## DISCUSSION AND DECISION

*Issue One*

The trial court erred in failing to apprise Turner of his due process rights.

Involuntary commitments in Indiana are governed by the provisions of Indiana Code Sections 16–14–9.1–1 to –18. Three types of commitment are provided for by the Code. These are emergency detention, temporary commitment, and regular commitment. Rufus Turner was originally detained pursuant to the emergency detention provisions of Indiana Code Section 16–14–9.1–7(a) (1976) which state that

"A person may be detained in a psychiatric hospital or center for a period not exceeding seventy-two (72) hours, excluding Saturdays, Sundays, and legal holidays, as follows:

(a) Written application must be made to a hospital or center by a health or police officer or other individual. The application must:

(1) state the applicant's belief that the person is mentally ill and dangerous and in need of immediate restraint; and

(2) contain a written statement by at least one (1) physician that based on an examination or based on information given him, the person may be mentally ill and dangerous.

The application, upon endorsement by a judicial officer authorized to issue warrants for arrest in the county in which the person is present, shall authorize any police officer to take the person into custody and transport him to the hospital or center to be detained, examined and given such emergency treatment as necessary for the preservation of the health and safety of the patient and the protection of persons and property. The expense of transportation shall be borne by the county in which the person is present."

However, Turner was detained from May 14, 1981, until June 8, 1981.[1] A hearing

---

1. The court also failed to hold a probable cause hearing as required by Indiana Code Section 16 14–9.1–7(b)—(e). These subsections state that

"(b) Before the end of the detention period, *the superintendent of the hospital or center* or the person's attending physician shall make a written report to the court, which must:

(1) state that the person has been examined;

(2) state that there is or is not probable cause to believe that the person is mentally ill and either dangerous or gravely disabled and requires continuing care and treatment.

(c) If the report indicates that there is such *probable cause, it shall:*

(1) recommend that there be a hearing to determine whether or not the person is mentally ill and either gravely disabled or dangerous and the need for continuing involuntary detention; and

(2) recommend that the person be detained in the hospital or center pending the hearing.

(d) If the report is that there is not probable cause to believe that the person is mentally ill and either dangerous or gravely disabled or, if at any time, the superintendent or the attending physician determines that the person is not disabled, the person shall be discharged from the hospital or center, and a written report of such determination and discharge shall be made a part of the patient's record.

then was held for the regular commitment of Rufus Turner on June 8, 1981.[2] At the conclusion of the hearing the trial court entered an order of regular commitment.

▮▮▮ Individuals involved in regular commitment proceedings are guaranteed certain procedural due process rights.[3] These include the right to receive adequate notice of hearing, to receive a copy of the petition or order, to be present at the hearing, to be represented by counsel, and to change of judge. Ind.Code § 16–14–9.1– 9(e) and (f) (1981). In addition, the right to be represented by counsel includes the right to have counsel appointed where the alleged mentally ill person cannot afford such attorney. *F. J. v. State*, (1980) Ind.App., 411 N.E.2d 372, 384. The facts in the instant case reveal little if any compliance with the statutory mandates. In fact the state concedes in its brief that the record fails to show that Turner was given proper notice of the hearing, and that Turner was not advised of his right to counsel or of his right to have counsel appointed. As this

court has noted,[4] involuntary commitment to a mental hospital involves "a massive curtailment of liberty," *Humphrey v. Cady*, (1972) 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394, and thereby "requires due process protection," *Addington v. Texas*, (1979) 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323. In any such proceeding the alleged mentally ill individual must be accorded his due process rights as prescribed by our statutes. Failure to accord these rights is fatal to the administration of justice and will require reversal. Here the appellant's due process rights were clearly violated by the trial court's failure to apprise Turner of these rights. *Accord F. J. v. State.* For this reason we reverse the order of the trial court committing Rufus Turner to the Madison State Hospital.

## Issue Two

The trial court erred in failing to find that Turner was mentally ill as required by the Indiana Code.

---

(e) If the report is that there is probable cause to believe the person is mentally ill and either dangerous or gravely disabled and requires continuing care and treatment, the court shall consider and act upon the report within twenty-four (24) hours of its receipt, excluding Saturdays, Sundays, and legal holidays. It may, in its discretion:

   (1) order the person released;

   (2) order the person's continued detention pending a preliminary hearing to be held within two (2) days of the order, excluding Saturdays, Sundays and legal holidays, to determine if there is probable cause to believe that the person is mentally ill and either dangerous or gravely disabled and in need of temporary commitment; or

   (3) order a final hearing to be held within two (2) days of the order, excluding Saturdays, Sundays, and legal holidays, to determine if the person is mentally ill and either dangerous or gravely disabled and in need of temporary commitment."

**2.** No record of the proceedings upon petition for regular commitment was made, with the exception of some progress notes taken by a member of the superintendent's office. These notes read verbatim as follows:

"06 08-81 Court Hearing:
A hearing was held this date with Judge Paynter, Clark Superior Court, regarding a commitment on Rufus Turner.

Dr. Hammitt provided Medical Testimony, and stated that Mr. Turner needs further hospitalization. When he is out of the hospital, he will not eat or sleep properly, and presents a danger to self.

Mr. Turner stated that he would rather go back to jail. Judge Paynter told Mr. Turner that jail was no place for him, and that he needed to stay in our hospital for treatment.

Also Judge Paynter stated that Rufus was again calling different people in Jeffersonville (including himself) collect, and Judge Paynter told Rufus that he should not do this. Rufus said, 'If you don't want me to call, just tell me so.'

Judge Paynter signed an Order of Regular Commitment as of this date.

PRESENT: Dr. Hammitt, Mr. Turner, Mr. Grant (Social Worker), Mr. Kloss (Attendant) and Mrs. Buchheit (Recorder).

  /s/<u>Mrs. Judith Buchheit</u>
    Mrs. Judith Buchheit
    Superintendent's Office"

**3.** While these rights are actually set out in Indiana Code Section 16–14–9.1–9(e) and (f), Section 10(c) expressly notes that "[p]atient rights and hearing procedures are the same as those provided in Section 9 of this chapter."

**4.** *In the Matter of the Commitment of Tedesco*, (1981) Ind.App., 421 N.E.2d 726, 729.

The Code requires that upon a petition for regular commitment there must be a showing "that the person is mentally ill and either dangerous or gravely disabled . . . ." Ind.Code § 16–14–9.1–10(d) (1981). The state has the burden in such case to show by clear and convincing evidence that the facts warrant commitment. *Addington v. Texas*, (1979) 441 U.S. 418, 425–33, 99 S.Ct. 1804, 1808–13, 60 L.Ed.2d 323; *In the Matter of the Commitment of Linderman*, (1981) Ind.App., 417 N.E.2d 1140. In this case the facts from the record indicate that Turner did not eat regularly and slept where he could. Evidence also indicates that Turner believed he was from another planet and that he had been calling others and himself collect. While this is sufficient to show that Turner may indeed be mentally ill, there was no such finding made by the court and failure to make such a finding based upon the evidence is error. We, accordingly, reverse the commitment of Rufus Turner.

Reversed.

NEAL and ROBERTSON, JJ., concur.