**In the Matter of the Commitment of
Clifton CHEEK, Appellant
(Defendant Below),**

**v.**

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49A04–9006–CV–258.

Court of Appeals of Indiana,
Fourth District.

March 18, 1991.

Virginia Dill McCarty, Landman and Beatty, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen P. Mills, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Clifton Cheek (age 20) appeals his involuntary regular commitment to Central State Hospital. He claims that 1) his due process rights were violated because the record does not disclose that he was fully advised of his rights; 2) the evidence is not clear and convincing that he was dangerous or gravely disabled; and 3) the State did not meet its burden of showing that a reasonable attempt had been made to contact willing and responsible family or friends to assist him in living free.

We affirm.

## DECISION

At the time of the commitment hearing on February 20, 1990, Cheek had been hos-

pitalized at LaRue Carter Hospital for approximately a year and a half. He had also been hospitalized on earlier occasions, but the record does not reveal whether Cheek had been previously committed nor does it reveal how or why he had been hospitalized at LaRue Carter. The Petition for Involuntary Commitment, a form document, was signed on February 1, 1990, by Jeffrey J. Kellams, M.D., a health officer, psychiatrist, and Cheek's treating physician. Kellams had checked the statement on the form indicating that Cheek presents a substantial risk that he will harm himself, but did not check the item on the form petition which would have indicated that Cheek was also dangerous to others. Kellams also marked the section indicating that Cheek was gravely disabled. The Marion County Sheriff was ordered to serve Cheek the Summons, Petition, and Notice of Rights and Procedures,[1] and Order Setting the Hearing and Directing Respondent to Appear on February 20, 1990. No return of service appears in the trial court's record.[2]

The record indicates that Barbara Collins was appointed by the court on February 6, 1990, to serve as Cheek's counsel. Cheek appeared at the hearing on February 20, 1990, with Collins. At the hearing, there were only two witnesses—Dr. Kellams and Cheek. Kellams testified he had last examined Cheek the day before the hearing. His diagnostic opinion was that Cheek had a mental illness—specifically chronic schizophrenic illness of a catatonic type. Kellams described Cheek's symptoms as follows:

"looseness of thought process, his thought content have at times been bizarre with delusional thinking. *Thoughts of killing people.* He has exhibited catatonic type behavior as well as catatonic thought process, where his thinking process slows down and becomes markedly labored. Physically it is

---

1. The Notice of Rights and Procedures is not included in the record.

2. The State submitted with its Appellee's Brief an affidavit and certification indicating that both the Marion County Sheriff and LaRue D. Carter Memorial Hospital show a return of ser-

vice in their records. Cheek objects to the consideration of the affidavit because the State failed to comply with Ind.Appellate Rule 7.2(C), which mandates the method for correcting the record. For purposes of this opinion, we will not consider the affidavit.

also extremely difficult at times for him to move, taking as long as fifteen to twenty minutes to progress a distance of twenty-five feet or so. At times he sits motionless for extended periods, long pauses between conversations because of psychic retardation of his thought processes ..."

(R. 6, emphasis added).

Kellams concluded that Cheek was gravely disabled and did not have the ability to provide for his needs because "[h]e is not at this time able to work, able to take care of himself independently with just routine activity of daily living, food preparation, even bathing has been a problem at times, he has had to be escorted into the shower and assisted." (R. 7).

He also testified that Cheek was dangerous to others because Cheek "has shown some belligerence with impulse striking out against nurses and other patients, on one occasion in an unprovoked manner, dived across the nurses' station desk after personnel." (R. 6). Kellams stated that this kind of behavior has subsided over the last several months with the onset of the anti-psychotic medication; however, Kellams stated that Cheek was still impulsive and unpredictable. Kellams further testified that the anti-psychotic medication—Closipin 200 mg taken three times a day—had helped his impulsive behavior to subside; however, he stated that Cheek was "probably not" reliable in taking his medication "without supervision at this time." (R. 7–8). Kellams also testified that progress was guarded, but Closipin has been helpful to some patients. At the time of the hearing, Cheek had been taking Closipin for three or four months.

Kellams testified that Cheek's mother had been faithful in attending and trying to help Cheek, but could not give him the twenty-four hour a day observation and the supervision he needs.

After Kellams testified, Cheek testified as follows:

"[Question by his trial counsel]: And Clifton you told me that you did not want to go to Central State, is that right?

A: No I don't think I will be okay at home, will come out of it at home.

The Court: I can't hear you, you will have to speak up. Why is it that you don't want to go to Central State?

A: Because I think I'm like maybe going to hell, from going to hospitals.

The Court: You're going to hell for going to hospitals?

A: I like it in hospitals. I don't think I really

Q: Did you want to go to your mother's?

A: Yes, I think I would be okay and start functioning right."

(R. 10–11).

The Court entered an Order of Regular Commitment, finding that Cheek suffered from a mental illness, that he was dangerous to others and gravely disabled, and that he was in need of commitment for a temporary period expected to exceed ninety days.

## I. Due Process Issues

Cheek contends the commitment should be reversed because there is nothing in the record to show he was served with notice of the hearing or that he was ever advised of his constitutional rights. He also argues that his constitutional right to effective notice was violated because the petition did not inform him that he would have to defend against a charge that he was dangerous to others.[3]

---

3. Although the Petition which Dr. Kellams filed did not have a mark on the statement that the respondent presents a danger to others, we observe that the Order Setting the Commitment Hearing, which the trial court ordered to be served upon Cheek, states: "The hearing shall determine if Respondent is mentally ill and *dangerous* or is mentally ill and gravely disabled (as those terms are defined in IC 16–14–9.9) and if so, to which facility Respondent shall be committed." (R. 8, emphasis added).

We note there is no statute IC 16–14–9.9. The correct definitional statute is IC 16–14–9.1–1. The statute for Regular Commitment procedure is IC 16–14–9.1–10 and incorporates procedures in IC 16–14–9.1–9.

■ Cheek is represented on this appeal by private counsel and and not the court appointed trial counsel. Cheek argues that a person facing involuntary deprivation of his liberty interest is entitled to due process, citing *Vitek v. Jones* (1980), 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552; IC 16–14–9.1–9(d)–(f), as incorporated into IC 16–14–9.1–10. Cheek also claims that minimum due process requires that a respondent in a commitment proceeding receive adequate notice of the hearing for preparation including receipt of a copy of the petition or order, IC 16–14–9.1–9(e), and is entitled to receive a change of judge. 16–14–9.1–9(f). *In re Turner* (1982), Ind.App., 439 N.E.2d 201.

We agree that effective and timely notice of all the foregoing rights is essential. *Vitek, supra; F.J. v. State* (1980), Ind.App., 411 N.E.2d 372. However, we also note that it is not necessary for a sheriff to personally deliver the notice of a regular commitment hearing to an institutionalized individual and that effective notice can be given by delivering or mailing the notice to the superintendent of the institution for delivery to the patient. Atty.Gen.Op.1982, No. 82–2, 120.

The State argues that because Cheek was represented by counsel and no claim has been made that his trial counsel was ineffective, he has waived the issue of violation of his due process rights, citing *Marshall v. State* (1970), 254 Ind. 156, 258 N.E.2d 628. In *Marshall*, the appellant claimed he was denied his constitutional right to a public trial, to which he had failed to object at the trial. Our supreme court held:

> "It has long been the law in Indiana that a constitutional right may be waived and where appellant has competent counsel a failure to assert the right constitutes a waiver. Without any allegation to the contrary, we must presume that appellant was adequately represented and that the waiver was willingly made with a full appreciation of its nature." (citations omitted).

*Id.* 258 N.E.2d at 631.

■ The State also argues that fundamental fairness requires the issue to be waived. An appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal. *Bennett v. State* (1973), 159 Ind.App. 59, 304 N.E.2d 827. The State argues that if the issue of lack of notice had been properly raised at the time of the hearing, the Court's record could have been corrected to show that the proper notice of the hearing was given. The State further argues that if his trial counsel had objected on the basis that Cheek was not notified that his dangerousness to others was an issue, the proceeding could have been continued to allow for preparation.

■ We agree with the State that Cheek has waived these issues. Constitutional errors are not necessarily fundamental errors and may be waived if not properly preserved for appeal. *Bryce v. State* (1989), Ind.App., 545 N.E.2d 1094. In *Bryce*, on appeal, the defendant argued that he did not receive due process of law because the record did not contain a written notice of his probation violation. No evidence was presented at the hearing to show that he did or did not receive the required notice. Bryce appeared with counsel at the hearing, demonstrating that—despite the lack of notice in the record—he apparently had received actual notice of the hearing. This court held that—although the record did not reflect that he had received the notice to which he was entitled—he was not denied fundamental due process and he had failed to preserve any error for appeal because he did not object at the hearing.

■ We agree that the record in a commitment hearing should demonstrate that an individual has been fully apprised of his constitutional rights. "These include the right to receive adequate notice of hearing, to receive a copy of the petition or order, to be present at the hearing, to be represented by counsel, and to change of judge." *Turner, supra*, 439 N.E.2d at 203. However, where, as here, an individual appears with counsel, it is apparent that the notice was *actually* received despite the fact that

a sheriff's return is not included in the trial record. We also note that the circumstances in *Turner,* on which Cheek relies, are distinguishable from the present case. In *Turner, little, if any, compliance with the statutory mandates* was found. In fact, there was not even a verbatim record of the proceedings made, but only a few "progress notes" were taken. More importantly, Turner was *not* represented by counsel.

In *Matter of Commitment of Binkley* (1978), 178 Ind.App. 301, 65 Ind.Dec. 450, 382 N.E.2d 952, 954, this court observed that the primary purpose of notice to the respondent is to inform him as to the nature of the action and to have a reasonable opportunity to make a defense, and if these objectives are fulfilled, notice comports with due process standards. This court further held:

> "Due process does not require, *ipso facto,* the highest standard of proof, even though personal liberty is at stake. The State, as *parens patriae* undertakes the beneficent task of treating the mentally ill, and under its police power protects the public from harm. These are valid, necessary state objectives which should not be thwarted by application of a too strict burden of proof. *And the situation would be an unfortunate one should a person in need of care be deprived of aid because he is mentally incapable of knowing his needs and the medical profession can not meet a too strict burden.*"

*Id.* 382 N.E.2d at 956, (emphasis added).

While the due process issue in *Binkley*[4] was in regard to the standard of proof required in commitment proceedings, the above comments apply to the present circumstances as well.

Here, Cheek was represented by counsel. The record discloses that the court ordered Cheek to be served with the petition, notice of hearing, and notice of his rights. The court appointed an attorney to represent him, and sent a notice to the attorney. At the hearing, his counsel made no objection that Cheek's due process rights were violated because he had not received notice, nor did his trial counsel object that the petition or physician's statement did not advise Cheek that his dangerousness to others was an issue. Cheek does not contend that his counsel was ineffective. We therefore find no violation of his due process rights.

## II. Sufficiency of the Evidence

Cheek contends that the State did not meet its evidentiary burden of showing by the "clear and convincing" standard that he was dangerous to others and that the State failed to meet its burden of demonstrating that he could not be cared for by family.

 In reviewing a claim of insufficient evidence, this Court considers only the evidence most favorable to the judgment along with all favorable inferences therefrom, keeping in mind that commitment may be ordered only upon a finding by clear and convincing evidence. *Jones v. State* (1985), Ind.App., 477 N.E.2d 353, 360.

 The trial court found that Cheek was mentally ill, gravely disabled and dangerous to others. "Gravely disabled" means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because he is unable to provide for his own food, clothing, shelter or other essential human needs; or has substantial impairment of judgment, reasoning or behavior that results in his inability to function independently. IC 16–14–9.-1–1(b). Dr. Kellams' testimony above is sufficient to establish that Cheek has a mental illness, and is unable to provide for even his most basic needs because "he is not able to work, able to take care of himself independently with just routine activity of daily living ..." (R. 7).

Dangerous means a condition, as a result of mental illness, which presents a substantial risk that the individual will harm himself or others. IC 16–14–9.1–1(c). Dr. Kel-

---

4. *Binkley* held that the standard of proof required was the preponderance of the evidence. After *Binkley,* the Supreme Court held that the burden of proof requires clear and convincing evidence. *Addington v. Texas* (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323; *In re D.W.H.* (1980), Ind.App., 411 N.E.2d 721.

lams' testimony that Cheek had been belligerent with impulsive behavior including striking out against nurses and other patients, had thoughts of killing others, and that Cheek was still impulsive and unpredictable, is sufficient to show that Cheek presented a danger to himself or others.

■ Cheek argues that the court failed to negate the possibility that he could be cared for by family. However, because the court found that he was *dangerous*, the State was not required to negate the possibility that he could be cared for by family or friends. *The Matter of Commitment of Linderman* (1981), Ind.App., 417 N.E.2d 1140, (State must negate possibility that individual could be cared for by family *if* individual is *not* dangerous). Furthermore, Dr. Kellams testified that Cheek's mother had tried to help, but would be unable to care for him should he be released because he needs continuous, twenty-four hour observation, and supervision in both the administration of medications and the activity of daily living. There was no other testimony presented to indicate that his mother would be willing—or able—to take on this responsibility.

Therefore, we affirm the judgment of the trial court.

CONOVER and GARRARD, JJ., concur.