**In re the Matter of the COM-MITMENT OF C.A., Appellant–Respondent,**

v.

**CENTER FOR MENTAL HEALTH, Appellee–Petitioner.**

No. 48A04–0205–CV–231.

Court of Appeals of Indiana.

Oct. 10, 2002.

Christopher A. Cage, Anderson, IN, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Indianapolis, IN, for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF CASE

Respondent–Appellant C.A. appeals the trial court's order of involuntary commitment for a period of one year. We affirm.

### ISSUE

C.A. raises one issue for our review, which we restate as: Whether the trial court erred in concluding that there was clear and convincing evidence to warrant C.A.'s involuntary commitment.

### FACTS

C.A. has been diagnosed as "schizophrenic, paranoid type,"[1] a mental illness characterized by "suspiciousness." The mental illness resulted in C.A.'s commitment to out-patient treatment in 1992 and 1994. The latter commitment appears to have required that C.A. reside in a group home. In July of 2001, C.A.'s commitment to the group home was extended until October 15, 2001. C.A. was released from the group home and first resided with his parents and then in his own apartment. On March 5, 2002, the Center for Mental Health (the "Center") filed a petition for involuntary commitment on the basis that C.A. was dangerous to himself and others and was gravely disabled.

A hearing was held on the petition. After hearing testimony regarding the extent of C.A.'s mental illness, the trial court found that C.A. should be involuntarily committed for a period of one year. In the commitment order, the trial court stated that C.A. was a danger to himself and was gravely disabled. The trial court further stated that C.A.'s commitment was as an out-patient. C.A. now appeals.

### DISCUSSION AND DECISION

C.A. contends that the trial court erred in determining that there was sufficient evidence to support an involuntary commitment. When reviewing a challenge to sufficiency of the evidence, we look to the evidence most favorable to the trial court's decision and all reasonable inferences to be drawn therefrom. *Commitment of G.M.*, 743 N.E.2d 1148, 1150–51 (Ind.Ct.App.2001). If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *Id.* at 1151.

In deciding this issue, we are mindful that C.A. has a vital interest in being protected from unjustified and significant deprivations of his personal liberty. *See Matter of Tedesco*, 421 N.E.2d 726, 729 (Ind.Ct.App.1981). On the other hand, the State has a compelling interest

---

1. "Schizophrenia" is "a psychotic disorder characterized by loss of contact with the environment, by noticeable deterioration in the level of functioning in everyday life, and by the disintegration of personality expressed as disorder of feeling, thought (as in hallucinations and delusions), and conduct."

"Paranoid Schizophrenia" is "schizophrenia characterized especially by persecutory or grandiose delusions or hallucinations or by delusional jealousy." *Merriam Webster Medical Dictionary* (1997 ed.) *http://www.intelihealth.com/cgi-bin/dictionary.cgi?book* (accessed Oct. 1, 2002).

in the supervision of persons who pose a threat to themselves. *Id.* at 730.

A person may be involuntarily committed if the trial court finds by clear and convincing evidence that (1) the person is mentally ill and either dangerous to himself or others or gravely disabled, and that (2) the commitment of the person is appropriate. Ind.Code § 12–26–2–5(e). C.A. does not contest the determination that he is mentally ill; however, he challenges the trial court's determination that the evidence was sufficient to show he was either dangerous to himself or gravely disabled.

■ The term "dangerous," means "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind.Code § 12–7–2–53. Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness. *Commitment of Gerke,* 696 N.E.2d 416, 418 (Ind.Ct.App. 1998). This standard is not met by a showing that a person made a rational and informed decision to engage in conduct that may have entailed a risk of harm. *Commitment of J.B. v. Midtown Mental Health Center,* 581 N.E.2d 448, 452 (Ind. Ct.App.1991), *trans. denied.* Instead, the evidence must show that there is a substantial risk that the person will harm himself as a result of a psychiatric disorder which "substantially disturbs the person's thinking, feeling, or behavior and impairs the person's ability to function." *Id.* at 451–2.

In the present case, the Center presented evidence, through the testimonies of a staff psychiatrist and C.A.'s case manager, that C.A. had a history of not taking the medication needed to combat the effects of his mental illness. The psychiatrist testified this medication was necessary to insure that C.A. takes care of his daily living needs, including nutrition and hydration. The psychiatrist also testified that C.A. had started a fire while cooking a hamburger in his parents' kitchen and that it was the kind of "accident" that occurred when a person is affected by a mental illness. The case manager testified that when he was off his medication C.A. would become very paranoid and would be "unable to function." The case manager also testified that the Center had attempted to insure that C.A. was taking his medication by delivering his medications directly to his house or to a designated location. These attempts were foiled by C.A. The case manager further testified that C.A. failed to recognize the seriousness of the fire that he started in his parents' kitchen.

The evidence presented by the Center is sufficient to establish that C.A.'s mental illness could be controlled by medication and that the Center's prior, less-intrusive attempts to insure the ingestion of the medication failed because of C.A.'s lack of cooperation. The evidence is also sufficient to establish that without his medicine C.A. may have "accidents" that have the potential of causing him physical harm and that he does not appreciate the extent of the harm. This evidence is sufficient to establish that C.A. is a danger to himself when he does not take medicine and that commitment on an out-patient basis is necessary to insure C.A.'s safety. Thus, the evidence is sufficient to support the trial court's commitment order.[2]

### CONCLUSION

The trial court did not err in concluding that the Center presented clear and con-

---

**2.** Because the commitment is warranted upon the basis of C.A.'s dangerous behavior, we do not address the propriety of the trial court's determination that C.A. is "gravely disabled." *See Commitment of J.B.,* 766 N.E.2d 795, 800 (Ind.Ct.App.2002).

vincing evidence of the need for an involuntary commitment.

Affirmed.

RILEY, J., and MATHIAS, J., concur.