**In re the COMMITMENT OF G.M., Appellant–Respondent.**

**No. 33A01–1006–MH–325.**

Court of Appeals of Indiana.

Dec. 13, 2010.

Mark I. Cox, New Castle, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

G.M. appeals from his involuntary regular commitment to the Logansport State Hospital. He asserts that the commitment order was not supported by sufficient evidence. His claim is that the court erroneously concluded that he was gravely disabled because that conclusion was premised upon a mere concern on the part of the petitioning psychiatrist at the Hospital that G.M. might relapse into his debilitating mental state and addiction to drugs and alcohol if he were to be released and went off his medication. G.M., without supporting authority, merely opines that such concern is not adequate proof of grave disability.

In his petition, Dr. Thompson stated that in his opinion, G.M.'s schizophrenia "coupled with his serve [sic] problem with addiction, prevents [G.M.] from functioning independently without observation desertion [sic] in the patient's judgment and reasoning abilities." Appellant's App. p. 45. At the commitment hearing, Dr. Thompson testified that he was of the opinion that in order to function significantly, G.M. needed the structured environment provided by the Hospital. In the commitment order, Judge Peyton based the commitment upon his finding that G.M. was:

> Gravely disabled and in danger of coming to harm because he cannot provide for his own food, clothing, shelter and other essential human needs as defined by I.C. 12–7–2–96.[1]

Appellant's App. p. 58.[2]

As noted, G.M. contends that the mere fear that he might relapse if released from his commitment is no evidence that he is unable to provide food, clothing, shelter and other essential human needs for himself. He points to the claim that when he was on work release, "he did fine. He went to his appointments and met with his case worker and counselor." Appellant's Br. p. 6. This is the sum and substance of his argument, which might have some degree of support from uncited case law. See K.F. v. St. Vincent Hosp. and Health Care Ctr., 909 N.E.2d 1063, 1067 (Ind.Ct. App.2009) (determining that a patient was able to function independently and reversing the order of commitment).

Contrariwise, the State points to the testimony of Dr. Thompson that:

> ... throughout [G.M.'s] hospitalization here, he is very medication seeking. He is constantly wanting to secure some form of medication that could cause him to be high or give him some sort of a buzz. And that's been a theme that he has done throughout his hospitalization. And looking at his prior record, he has a long history of noncompliance. And it appears that drugs and alcohol become a significant, significant part of that. Given his presentation throughout his hospitalization, I'd be fearful that he would rapidly decompensate back, decompen-

---

1. Included in the statutory definition of "gravely disabled," as separate and apart from an inability to provide for oneself the essential human needs, is "a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently." Ind.Code § 12–7–2–96 (1992). G.M correctly asserts that there was no evidence to the effect that he was unable to "provide for his own food, clothing, shelter and other essential human needs." In this regard there was certainly no "clear and convincing evidence" of such as required by law. See K.F. v. St. Vincent Hosp. and Health Care Ctr., 909 N.E.2d 1063, 1067 (Ind.Ct.App. 2009). There is evidence, however, that G.M. is unable to function independently.

2. Indiana Code section 12–26–7–5 (2009) provides that if the court finds the individual to be "mentally ill and either dangerous or gravely disabled" the court may order commitment in an appropriate facility.

sate or relapse back into substance abuse and undoubtedly decompensate with his Schizophrenia as well. Tr. p. 7.[3]

■ Even though there was not adequate demonstration that G.M. was incapable of providing himself with food, clothing, shelter and other essential human needs, we observe that in light of Dr. Thompson's testimony and opinions, G.M. might be correctly determined to be gravely disabled under the second definition set forth in the statute and as set forth in Footnote 1 above. In other words, a reasonable determination from the opinion of Dr. Thompson as set forth in his commitment petition and as he testified at the May 21, 2010 commitment hearing is that if G.M. is released to an unsupervised environment his history indicates that he will go off his prescribed medication, be unable to function independently and thus will relapse into his drug and alcohol addictions and exacerbate his paranoid schizophrenia.

■ Such a determination from the evidence of record, if drawn by a reasonable person, even if not drawn by the committing court, is an adequate basis for affirming the commitment order. It is well established that if a reasonable person might reach the conclusion reached by the committing court, a commitment will be affirmed even if there are other reasonable conclusions possible. We conclude that the converse is also true. Even if the committing court does not base its determination upon the evidence which supports a conclusion of grave disablement, if such evidence exists and is clear and convincing, it is not necessary that we reverse the commitment order and direct that the commitment be terminated and the patient released. *See G.P.H. v. Giles*, 578 N.E.2d 729, 739 (Ind.Ct.App.1991), *trans. denied* (Rucker, J., concurring in result). In *G.P.H.*, the committing court found that the commit tee was both dangerous to himself *and* gravely disabled. *Id.* However, Judge Rucker voted to affirm the commitment order because although the evidence did not support a conclusion that G.P.H. was dangerous to himself or others, it did support the conclusion that he was gravely disabled.[4] *Id.* Similarly, in *J.S. v. Ctr. for Behavioral Health*, 846 N.E.2d 1106, 1111 (Ind.Ct.App.2006), *trans. denied*, this court considered a commitment based upon the conclusion that the individual was both dangerous *and* gravely disabled. The opinion affirmed the commitment order concluding that although the evidence did not support the determination that the patient was dangerous, it did support the alternative ground that she was gravely disabled. *Id.* at 1113. The Supreme Court denied transfer by a split decision concerned primarily with the forced medication aspect of the commitment order. *J.S. v. Ctr. for Behavioral Health*, 859 N.E.2d 666 (Ind.2007). Insofar as relevant, the Court of Appeals decision was thus left intact.

Perhaps it is appropriate for us to derive some guidance from *Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind.1998). In that case, an award of attorney's fees was being reviewed. *Id.* at 922. The trial court had awarded the fees upon an erroneous theory of law. *Id.* at 923. Our Supreme Court, however, noted an affirmance of the judgment may be permitted even though the "trial court reached the same result through a different legal theory.... [T]he appellate court is equally well positioned to

---

**3.** G.M.'s mental condition was diagnosed as "Schizophrenia, Paranoid Type." Tr. p. 5.

**4.** The Court of Appeals decision which affirmed the commitment order concluded that there was clear and convincing evidence that the commit tee "posed a substantial risk of harm to himself, *and* that he was gravely disabled...." *G.P.H.*, 578 N.E.2d at 733 (emphasis supplied).

address application of [a dispositive alternative theory]."[5] *Id.*

In the case before us, we hold that the conclusion which the committing court stated as the basis for its order was not supported by the evidence but that rather than termination of the commitment, the more appropriate solution to the problem presented is to remand the matter to the committing court to conduct a review proceeding within fifteen days pursuant to Indiana Code section 12–26–15–1 (2004).[6] The review should be a current review of G.M.'s care and treatment. In the review proceeding, due consideration shall be given to the "step-down" treatment plan set forth by Dr. Thompson in his May testimony,[7] or to any alteration or modification of such treatment plan deemed appropriate to G.M.'s present mental condition and to such care and treatment as may be appropriate at the present time.

This cause is remanded to the Henry Superior Court for further proceedings consistent with this opinion.

DARDEN, J., and BROWN, J., concur.

---

5. An earlier case from this court involving a mental health commitment, *In the Matter of the Commitment of Turner*, 439 N.E.2d 201 (Ind.Ct.App.1982) would seem to be contra. There, the committing court failed to make a finding that Turner was mentally ill. *Id.* at 204. Although the evidence would have supported such a finding, this court held that such failure was "error" and the commitment was reversed. *Id.*

6. By statute, Indiana Code section 12–26–1–8 (1992) permits a court to detain the individual in an appropriate facility pending a hearing. *See In Re Tedesco*, 421 N.E.2d 726, 728, (Ind. Ct.App.1981) (applying the predecessor statute, Indiana Code section 16–14–9.1–3 (repealed 1992)).

7. Dr. Thompson testified that G.M.'s current place of confinement, The Isaac Ray Center of the Logansport State Hospital, "is the most secure facility in the State." Tr. p. 15. His "step-down" treatment plan contemplated transfer to a less restrictive environment such as to LaRue Carter Hospital in Indianapolis, which is closer to his family. *Id.* It was thought that if G.M. continued to take his medication and to cooperate with his care and treatment, he would demonstrate that he could continue to do well in a less restrictive environment and be "reintegrated back into a community setting." *Id.*