In the Matter of the COMMITMENT OF S.S., Appellant–Respondent,

v.

WISHARD HEALTH SERVICES, MID-TOWN COMMUNITY MENTAL HEALTH CENTER, Appellee–Petitioner.

No. 49A02–1011–MH–1251.

Court of Appeals of Indiana.

June 24, 2011.

Matthew D. Anglemeyer, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Robin Bandy, Deputy Counsel, Wishard Health Services, Indianapolis, IN, Attorney for Appellee.

### OPINION

KIRSCH, Judge.

S.S. appeals from the trial court's order for her temporary commitment. Although S.S.'s commitment has already expired, she raises the following consolidated and restated issue for our review: whether the trial court lacked jurisdiction to preside over her commitment proceedings because the report following her emergency detention was filed after the period of her deten-

tion had ended, resulting in a violation of her due process rights from the ensuing infringement of her liberty interests.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 16, 2010, S.S. was admitted to Wishard Health Services ("Wishard") for evaluation after having been arrested. At 11:30 a.m. on that date, Wishard filed an application with the probate court, seeking to have S.S. involuntarily committed and alleging that S.S. suffered from a psychiatric disorder that substantially disturbed her thinking, feeling, or behavior and impaired her ability to function. The application further alleged that S.S. was dangerous to herself and to others. Attached to the application was a "Physician's Emergency Statement," indicating that S.S. had been initially examined by Dr. Venkat Polavarapu ("Dr. Polavarapu") and displayed signs of paranoia and aggression.

Dr. Michael DeMorte ("Dr. DeMorte"), Assistant Clinical Professor of Psychiatry with Indiana University, and a licensed physician for Wishard, examined S.S. on September 21, 2010. Dr. DeMorte concluded that S.S. suffered from psychosis NOS (not otherwise specified), a mental illness, and was gravely disabled. On Tuesday, September 21, 2010, Wishard filed a "Report Following Emergency Detention" at 11:46 a.m., to which was at-tached Dr. DeMorte's "Physician's Statement."

On September 22, 2010, the probate court filed an order scheduling a commitment hearing, for the next day. Dr. Polavarapu testified during the commitment hearing. At the conclusion of the hearing, the probate court found that S.S. was gravely disabled and ordered a temporary commitment of S.S. to expire on December 22, 2010. S.S. filed a motion to correct error, which was denied by the probate court. S.S. now appeals. Additional facts will be supplied below as needed.

## DISCUSSION AND DECISION

We note at the outset that S.S.'s commitment expired on November 23, 2010. "Generally, we dismiss cases that are moot, but a moot case may be decided on its merits when it involves questions of great public interest, such as involuntary commitment, that are likely to recur." *Commitment of S.T. v. Cmty. Hosp. N.*, 930 N.E.2d 684, 687 (Ind.Ct.App.2010). We write now as we choose to address this issue of first impression in Indiana.[1]

We have previously stated as follows:
Proceedings for involuntary commitment are subject to federal due process requirements. For the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty and thus requires due process protection. The loss of liberty produced by an involuntary commitment is more than a loss of freedom resulting from the con-

---

1. In *Colter v. Grant–Blackford Mental Health, Inc.*, 531 N.E.2d 1227 (Ind.Ct.App.1988), a panel of this court considered a variation of the issue we decide today, namely how the report should be communicated to the court, i.e., in written or verbal communications. We held that the manner of communication was irrelevant. *Id.* at 1230. In *Matter of Tedesco*, 421 N.E.2d 726 (Ind.Ct.App.1981), a panel of this court considered yet another variation of the issue we decide today, namely what period of prehearing detention is reasonable in the context of an application for a regular commitment, where no time frame was provided by statute. We find these cases to be factually distinguishable from the present case and address them only to acknowledge them, as they served as a basis for the trial court's order denying S.S.'s motion to correct error.

finement. Commitment to a mental hospital can engender adverse social consequences to the individual; whether we label this phenomena stigma or choose to call it something else[,] . . . we recognize that it can occur and that it can have a very significant impact on the individual.

*Id.* (internal citations and quotations omitted). Thus, we acknowledge the extreme importance and constitutional dimension of the liberty interest of the detained person.

■ This appeal involves the interpretation of statutes. Statutory interpretation is a question of law and is reviewed under a *de novo* standard on appeal. *Reeves v. Downin*, 915 N.E.2d 556, 558 (Ind.Ct.App. 2009).

■ S.S. argues that the probate court lacked jurisdiction to preside over her commitment hearing, and that the subsequently-entered order for temporary commitment was void because of the lack of jurisdiction. A short discussion of the statutory framework for the procedural requirements for involuntary treatment of mentally ill individuals is necessary to explain why we conclude otherwise.

Indiana Code section 12–26–1–1 provides that an individual who is mentally ill and either dangerous or gravely disabled may be involuntarily detained. In this case, an emergency detention was sought under Indiana Code chapter 12–26–5. A person may be detained in a facility for not more than seventy-two hours, excluding Saturdays, Sundays, and legal holidays, if a written application for detention is filed with the facility. Ind.Code § 12–26–5–1.

Prior to the end of a detention period under Indiana Code chapter 12–26–5, the superintendent of the facility or the individual's attending physician shall make a written report to the court indicating that the individual has been examined and expressing an opinion about whether probable cause exists to believe that the individual is mentally ill and either dangerous or gravely disabled and requires continuing care and treatment. Ind.Code § 12–26–5–5. If the report states that there is probable cause, the report shall recommend that the court hold a hearing to determine if the individual is mentally ill and either dangerous or gravely disabled and in need of continuing involuntary detention, and that the individual be detained in the facility pending the hearing. Ind.Code § 12–26–5–7.

The court is then required to consider and act upon the report suggesting the existence of probable cause within twenty-four hours of receiving the report. Ind. Code § 12–26–5–8. After receiving a report, the court may order the individual released, order the continued detention of the individual pending a preliminary hearing, or order a final hearing. Ind.Code § 12–26–5–9. If the court orders a hearing, that hearing must be held not later than two days after the order. *Id.*

Both parties concede that Wishard's "Report Following Emergency Detention," to which was attached Dr. DeMorte's "Physician's Statement," was filed at 11:46 a.m., sixteen minutes after the end of S.S.'s detention period. The disagreement between the parties lies in the consequence of the tardy filing of the report. S.S. argues that the late filing of the report stripped the probate court of its jurisdiction to preside over the preliminary hearing, i.e., the timely filing of the report was a jurisdictional prerequisite. Wishard, on the other hand, argues that the timely filing of the report was a procedural requirement, without statutorily-imposed consequences for untimely filing. We hold that the timely filing of the report is a procedural requirement.

We note that S.S. has failed to cite to any statutory authority for her contention that the timely filing of the report is a jurisdictional prerequisite. Indeed, there

are strong reasons why the timely filing of the report is not jurisdictional. Should the trial court lose jurisdiction over the case, the detained person would be deprived of a forum in which to seek an order of release.

As for due process concerns, vis-à-vis S.S.'s liberty interests, Wishard's failure to comply with the statutory time frame was *de minimis* with no resulting harm to S.S. Had the report been filed at the last moment prior to the end of S.S.'s detention period, she likewise would have had an extended period of detention during the statutorily-created, twenty-four-hour time frame in which the trial court must consider the report and act. Indiana Code section 12–26–2–1 provides that the right of a person to apply to an appropriate court for a writ of habeas corpus is not limited or restricted. Thus, a remedy for unlawful custody is available. However, in this situation, such an application would likely have been denied.

The report stated that S.S. was mentally ill and gravely disabled, thus S.S. was not entitled to be released. S.S. does not dispute the contents of the report. The probate court acted in a timely fashion upon receipt of the report, set the matter for hearing, and entered its order of temporary commitment within the time frame established by statute. Thus, there was no prejudice to S.S. As previously stated, we acknowledge the extreme importance and constitutional dimension of the liberty interests of detained persons, but also acknowledge that those interests must be balanced by consideration of the safety interests of the detained person and society.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.