



FILED

May 27 2025, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Commitment of J.S.,

*Appellant-Respondent,*

v.

Neuropsychiatric Hospital of Indianapolis,

*Appellee-Petitioner.*

May 27, 2025

Court of Appeals Case No.
25A-MH-979

Appeal from the
Marion Superior Court

The Honorable
Denise F. Hayden, Judge Pro Tem

Trial Court Cause No.
49D08-2504-MH-17260

**Opinion by Senior Judge Robb**
Judges Brown and Tavitas concur.

**Robb, Senior Judge.**

# Statement of the Case

J.S. appeals the trial court's order of temporary commitment to the Neuropsychiatric Hospital of Indianapolis ("NHI"). J.S. argues NHI failed to present sufficient evidence to sustain: (1) her involuntary commitment; and (2) the court's oral directive that she refrain from acts of violence. Concluding that there is clear and convincing evidence to support the orders, we affirm.

# Facts and Procedural History

At the beginning of this case, J.S. was thirty-six years old and had been hospitalized for mental health issues "[m]ore times than [she] can count." Tr. p. 33. She was admitted to NHI on March 28, 2025, having been referred there by another hospital. The referring hospital reported that J.S. was agitated, with disorganized thoughts that were not "oriented to reality." *Id.* at 6. For example, she had complained of being extremely dehydrated after being tortured. J.S. was also concerned about "being maligned" and stated she had been born into the Ku Klux Klan. *Id.* In addition, she claimed the Ku Klux Klan was currently controlled by a judge in Kokomo.

[3] J.S. repeated some of those statements during treatment sessions with NHI psychiatrist Dr. Olaniyi Osuntokun. She also displayed manic behavior, disordered, paranoid thoughts, and "pressured" speech that was difficult to interrupt. *Id.* at 7. She told Dr. Osuntokun that a methamphetamine dealer had systemically persecuted her when she lived in Marion. J.S. then said she had moved to Kokomo, where she had been repeatedly assaulted at a women's shelter. She alleged that other residents had "conspired to kill her" and had assaulted her with a "four by four." *Id.* J.S. also displayed grandiose thoughts, claiming she had an IQ of 216. When discussing her childhood, J.S. claimed she had been sexually abused and trafficked from the age of two.

[4] Dr. Osuntokun diagnosed J.S. with unspecified psychotic disorder. She denied having psychosis or schizophrenia, claiming that she instead had a condition similar to post-traumatic stress disorder. J.S. took antipsychotic medications as prescribed at NHI, but she denied needing them. She also initially refused to take a medicine called risperidone, but she began taking it a few days before the evidentiary hearing in this case.

[5] On the day before the hearing, Dr. Osuntokun received a report that J.S. had expressed homicidal statements. When the doctor questioned J.S., J.S. admitted she had made the statements, and she thought her life was in danger. Dr. Osuntokun concluded J.S. was a danger to others "due to her paranoia about being persecuted and feeling that she needs to act in self-defense." *Id.* at 10. The doctor further concluded J.S. had poor insight into her condition and would not consistently take medications. J.S. asked to be released to a shelter,

but Dr. Osuntokun concluded she would not be able to stay in a shelter for long if she continued to display symptoms of untreated psychosis.

[6] On April 11, 2025, NHI filed a petition for temporary commitment, asking the trial court to require J.S. to remain in NHI's custody for up to ninety days. The trial court held an evidentiary hearing, at which J.S. testified. She stated that when she was four years old, her grandfather told her that nurses had removed her hymen at birth, and he had killed them. She also said she took "325 pills" at the age of sixteen as a suicide attempt and was treated at a hospital. *Id.* at 25. Next, J.S. said that when she lived in Marion, Indiana, unnamed persons forced her to take methamphetamines and work as a prostitute, threatening to "kill the children." *Id.* at 27. She claimed that an entire family, including a toddler, were killed despite her efforts. And J.S. denied being schizophrenic, claiming instead to have cancer and "Peter Pan syndrome," among other conditions. *Id.* at 28.

[7] J.S. further stated that she was "afraid that somebody's going to come up to me and hurt me, and I'll have to defend myself, and I'm very muscular[.]" *Id.* When asked if she could feed herself, she said, "I know how to shop for my own groceries. I know how to get free food from food pantries. I know how to get food from dumpsters. I know how to get food from the floor[.]" *Id.* at 31. J.S. further said she could get food "from osmosis[.]" *Id.*

[8] At the end of the hearing, the trial court determined J.S. should be committed to NHI's custody for a period not to exceed ninety days. Among other

conditions, the trial court orally ordered J.S. to refrain from "violence between family members or other members of the public[.]" *Id.* at 38. In a written order, the court found that J.S. "is suffering from a mental illness" and "is dangerous and/or gravely disabled" as defined by statute. Appellant's App. Vol. II, p. 19. This appeal followed. J.S. was discharged from NHI on April 28, 2025.

## Discussion and Decision

[9] J.S. challenges the sufficiency of the evidence that supports the trial court's verbal and written orders.[1] A petitioner seeking to have a person involuntarily committed must "prove by clear and convincing evidence that . . . the individual is mentally ill and either dangerous or gravely disabled; and . . . detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e) (2007). Clear and convincing evidence is "an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond

---

[1] NHI argues J.S.'s appeal is moot because she has been discharged from NHI. J.S. has moved to strike the mootness argument from NHI's brief, claiming that the argument is inappropriate because her appeal is part of the expedited appellate project for certain civil commitment cases. *See In the Matter of the Marion Cnty. Expedited Mental Health Appeals Pilot Project*, Case No. 24S-MS-190 (Ind. Jul. 16, 2024). The Indiana Supreme Court's order establishing the pilot project states that parties must seek leave to opt-out from the project if the issues on appeal "go beyond sufficiency of the evidence[.]" *Id.* at Ex. A, p. 1. NHI did not seek leave to opt out. Consequently, we grant J.S.'s motion to strike by separate order.

We also note that in *J.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 25S-MH-111, 2025 WL 1291390, at *3 (Ind. May 5, 2025), the Indiana Supreme Court "decided to guarantee merits review for almost all timely temporary commitment appeals." As a result, the Court held "that timely appeals of temporary commitment orders generally do not become moot when the orders expire." *Id.* at *6. In appeals from orders of temporary civil commitment, appellees who wish to raise mootness must make an "extraordinary showing" that the orders do not carry collateral consequences for the patient. *Id.* NHI does not attempt to make such a showing in this case.

a reasonable doubt." *T.D. v. Eskenazi Health Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015).

[10] When reviewing a trial court's order of commitment, we look only to the evidence most favorable to the judgment and all reasonable inferences drawn therefrom. *E.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 194 N.E.3d 1130, 1135 (Ind. Ct. App. 2022). "[W]e will affirm if, after considering the probative evidence and reasonable inferences supporting the decision, a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence." *Matter of B.N.*, 137 N.E.3d 330, 336 (Ind. Ct. App. 2019). "The determination of whether an involuntary commitment is appropriate is fact-sensitive." *R.P. v. Optional Behav. MHS*, 26 N.E.3d 1032, 1037 (Ind. Ct. App. 2015).

[11] J.S. disputes the trial court's determination that she is mentally ill. "Mental illness" is defined as "a psychiatric disorder that . . . substantially disturbs an individual's thinking, feeling, or behavior; and . . . impairs the individual's ability to function." Ind. Code § 12-7-2-130(1) (2023).

[12] J.S. admitted she has been hospitalized many times for mental health treatment. She was referred to NHI by another hospital for disorganized thoughts and agitation. Dr. Osuntokun diagnosed J.S. with unspecified psychotic disorder. Her symptoms included grandiose, delusional, and paranoid thinking, manic presentation, and pressured speech. The doctor explained that he would need to treat J.S. for a longer period of time to determine if her psychotic disorder

was schizophrenic or schizoaffective in nature. He added that J.S.'s illness substantially impaired her thinking, behavior, or reasoning.

[13] J.S. argues that Dr. Osuntokun never sought to verify whether some of her allegedly delusional statements about past trauma were in fact true, but this argument amounts to a request to reweigh the evidence. NHI presented clear and convincing evidence to sustain the trial court's determination that J.S. is mentally ill. *See T.G. v. Cmty. Health Network*, 250 N.E.3d 490, 496 (Ind. Ct. App. 2025) (affirming trial court's determination that patient was mentally ill; patient diagnosed with unspecified psychosis, as shown by paranoid delusions).

[14] Next, J.S. challenges the trial court's determination that she is dangerous. "Dangerous," for purposes of this appeal, "means a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53(a) (2023). "Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness." *Commitment of C.A. v. Ctr. for Mental Health*, 776 N.E.2d 1216, 1218 (Ind. Ct. App. 2002). A trial court "is not required to wait until harm has nearly or actually occurred before determining that an individual poses a substantial risk of harm to others." *R.P.*, 26 N.E.3d at 1036.

[15] In J.S.'s case, Dr. Osuntokun explained that she has poor insight into her mental health and denies needing to take antipsychotic medication despite her symptoms of paranoia and delusional thoughts. J.S. framed her threats of

violence in defensive terms, that is, she claimed she would not attack someone unless they attacked her first. But Dr. Osuntokun noted that her "paranoia about being persecuted" and repeated claims of being subjected to assault may cause her to act violently when she is not genuinely under threat. Tr. p. 10. There is clear and convincing evidence to sustain the trial court's determination of dangerousness and the court's oral order directing J.S. to refrain from acts of violence. *See R.P.*, 26 N.E.3d at 1036-37 (affirming trial court's finding of dangerousness; patient was diagnosed with schizoaffective disorder and paranoid delusions but denied being mentally ill and threatened to hurt unnamed people who he believed were persecuting him).

[16] Indiana Code section 12-26-2-5(e) is written in the disjunctive, and thus a petitioner need only prove a patient is either dangerous or gravely disabled. *A.S. v. Ind. Univ. Health Bloomington Hosp.*, 148 N.E.3d 1135, 1140 (Ind. Ct. App. 2020) (quotation omitted). We need not address grave disability because we have determined the trial court's dangerousness determination is supported by sufficient evidence. Even so, the General Assembly has defined "gravely disabled" as

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96 (1992).

[17] Here, the evidence demonstrates that J.S. lacks insight into her medical conditions and does not think she needs medicine to treat her psychotic disorder. Before hospitalization, J.S. had lived in a shelter, but Dr. Osuntokun explained that she would not be able to live in a shelter for long if she did not take her medicine. And J.S. testified that she could feed herself via food obtained from "the floor" or "osmosis." Tr. p. 31. This evidence is sufficient to support the trial court's determination that J.S. is gravely disabled because her untreated mental illness renders her unable to provide for her essential human needs. *See F.L. v. Cmty. Fairbanks Behav. Health*, 245 N.E.3d 1033, 1035-36 (Ind. Ct. App. 2024) (affirming trial court's determination patient was gravely disabled; patient denied having mental illness and rejected medicine, and doctor opined that she would not be able to meet basic needs without further hospitalization), *trans. denied*.

## Conclusion

[18] For the reasons stated above, we affirm the judgment of the trial court.

[19] Affirmed.

Brown, J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT
Talisha R. Griffin
Sarah Medlin

Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Daniel J. Gibson
Austin P. Sparks
Delk McNally LLP
Muncie, Indiana